784 F.2d 323
 NORTHWEST SOUTH DAKOTA PRODUCTION CREDIT ASSOCIATION, a
corporation, Appellant,
v.
Gilford L. SMITH and Viola A. Smith, Husband and Wife, and
Cheyenne River Housing Authority, Acting through
the Department of Housing and Urban
Development, Appellees.
 No. 84-2460.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 14, 1985.
Decided Feb. 19, 1986.
 
 James H. Wilson, Rapid City, S.D., for appellant.
 James F. Wagenlander, Denver, Colo., for appellees.
 Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Northwest South Dakota Production Credit Association (PCA) appeals from an order entered in the District Court[1] for the District of South Dakota dismissing its complaint without prejudice for want of subject matter jurisdiction. For reversal PCA argues that the district court erred in determining that 25 U.S.C. Sec. 483a does not provide federal question jurisdiction of an action to foreclose a mortgage on individually owned Indian trust lands. For the reasons discussed below, we affirm the order of dismissal, not because jurisdiction is lacking, but because the complaint fails to state a federal claim upon which relief may be granted.
 
 
 2
 Gilford and Violet Smith, members of the Cheyenne River Sioux Tribe, executed a promissory note to PCA secured by a mortgage on trust land located within the Cheyenne River Sioux Indian Reservation in South Dakota. The Cheyenne River Housing Authority leased part of the land from the Smiths before it was mortgaged. The Bureau of Indian Affairs of the Department of the Interior approved the mortgage, as required by federal law. After the Smiths defaulted on the loan, PCA brought suit against them and the Housing Authority in federal district court, seeking foreclosure and sale of the mortgaged land and a declaratory judgment recognizing PCA's mortgage as a first and superior lien.
 
 
 3
 The Smiths did not answer the complaint or appear. The Housing Authority filed a motion to dismiss the complaint for lack of subject matter jurisdiction and an amended motion to dismiss as to the Housing Authority on the basis of its sovereign immunity as an agency of the tribal government. PCA then moved to amend its complaint to add a jurisdictional statement. Without ruling on the motion to amend, the district court stated it would "consider [PCA's] allegations of jurisdiction in the amended complaint as though the court had allowed the amendment."
 
 
 4
 The amended complaint invoked federal question jurisdiction, 28 U.S.C. Sec. 1331, on the basis that the case arises under 25 U.S.C. Sec. 483a (1982), which provides:
 
 
 5
 The individual Indian owners of any land which either is held by the United States in trust for them or is subject to a restriction against alienation imposed by the United States are authorized, subject to approval by the Secretary of the Interior, to execute a mortgage or deed of trust to such land. Such land shall be subject to foreclosure or sale pursuant to the terms of such mortgage or deed of trust in accordance with the laws of the State or Territory in which the land is located. For the purpose of any foreclosure or sale proceeding the Indian owners shall be regarded as vested with an unrestricted fee simple title to the land, the United States shall not be a necessary party to the proceeding, and any conveyance of the land pursuant to the proceeding shall divest the United States of title to the land. All mortgages and deeds of trust to such land heretofore approved by the Secretary of the Interior are ratified and confirmed.
 
 
 6
 The district court determined that no federal question was presented because the case involved only a mortgage foreclosure action which, by the terms of Sec. 483a, would have to be decided under state law. The district court also determined that there was no federal jurisdiction under 28 U.S.C. Secs. 1332 (diversity of citizenship), 1349 (corporation organized under federal law as party), or 1346 (United States as defendant). The district court then dismissed the complaint without prejudice. This appeal followed.
 
 
 7
 PCA argues that it has a substantial claim--the right to foreclosure--based directly on 25 U.S.C. Sec. 483a and that the district court therefore has federal question jurisdiction. The Housing Authority argues that Sec. 483a does not confer jurisdiction but merely permits trust land mortgages and foreclosures according to local law.[2]
 
 
 8
 A non-frivolous claim of a right or remedy under a federal statute is sufficient to invoke federal question jurisdiction. See Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, 457 U.S. 15, 21 n. 6, 102 S.Ct. 2202, 2206 n. 6, 72 L.Ed.2d 639 (1982) (Jackson Transit ). Because PCA's complaint alleged the right to foreclose a mortgage on trust land pursuant to 25 U.S.C. Sec. 483a, and because that asserted federal claim is not wholly insubstantial and frivolous, the district court had jurisdiction to determine whether PCA stated a cause of action upon which relief could be granted. See 457 U.S. at 21 n. 6, 102 S.Ct. at 2206 n. 6.
 
 
 9
 The issue is whether PCA's complaint states a federal cause of action. In other words, does Sec. 483a permit a mortgagee of Indian trust land to sue in federal court for foreclosure?
 
 
 10
 Jackson Transit is pertinent to our resolution of this question. In that case, a federal statute required the local government to preserve transit workers' existing collective bargaining rights before it could receive federal assistance to buy a private bus company. After the purchase, the union sued the Transit Authority for violating both an agreement under the federal statute and a new collective bargaining agreement. The question before the Supreme Court was whether the federal statute itself permitted suit in federal court because Congress intended such contract actions to set forth federal claims. After examining the statute and the legislative history, the Court concluded that no federal cause of action was created and that Congress intended the labor agreements "to be governed by state law applied in state courts." 457 U.S. at 29, 102 S.Ct. at 2210.
 
 
 11
 Thus, congressional intent is our guidepost as we determine the scope of rights and remedies under 25 U.S.C. Sec. 483a. In Jackson Transit terms, if Congress intended Sec. 483a trust land mortgages to be "creations of federal law" and the accompanying rights and duties to be "federal in nature," then PCA's complaint would state a federal claim. Id. at 23, 102 S.Ct. at 2207.
 
 
 12
 The language of Sec. 483a arguably implies a federal interest in trust land foreclosure suits. The statute applies to land "held by the United States in trust" or "subject to a restriction against alienation imposed by the United States."[3] The statute also requires federal approval (by the Secretary of the Interior) of trust land mortgages. In those respects, Sec. 483a reflects the traditional federal control of Indian lands. But Sec. 483a removes federal restrictions under certain conditions, explicitly authorizing mortgages and foreclosures.
 
 
 13
 Significantly, Sec. 483a directs that foreclosure shall be "pursuant to the terms of such mortgage ... in accordance with the laws of the State or Territory in which the land is located." This clause strongly suggests that Congress did not intend to create a federal cause of action. Additional support for that position lies in the statute's provisions that the United States is not a necessary party to the foreclosure proceeding and that "any conveyance of the land pursuant to the proceeding shall divest the United States of title to the land." These provisions indicate a withdrawal of federal involvement in foreclosure proceedings.
 
 
 14
 The legislative history of Sec. 483a reveals little other than a congressional desire to "encourage individual Indian landholders to utilize commercial credit," to encourage extension of that credit by reassuring lenders that they could obtain foreclosurable first mortgages on trust lands, and to clarify that the federal government would not be a necessary party or retain any claim to the land after a foreclosure sale. S.Rep. No. 1647, 84th Cong., 2d Sess., reprinted in 1956 U.S.Code Cong. & Ad.News 2304, 2304-05.
 
 
 15
 Rather than evincing an intention to create a body of federal law applicable to mortgages on Indian trust lands, the statute's language and legislative history demonstrate that Congress intended to reduce federal involvement and to accommodate local law to trust land mortgages. See Jackson Transit, 457 U.S. at 27, 28, 102 S.Ct. at 2209-10. We conclude that Sec. 483a does not create a federal cause of action for foreclosure of mortgages on Indian trust lands. The statute secures no federal right. PCA has therefore failed to state a federal claim upon which relief may be granted. For that reason, we affirm the district court's dismissal of the complaint.
 
 
 16
 PCA argues that if it is not permitted to proceed in federal court, it will have no other forum in which to enforce its mortgage agreement--a result contravening the intent behind Sec. 483a.[4]
 
 
 17
 We agree with the parties that the state court lacks jurisdiction to hear this case. Generally speaking, state courts have no jurisdiction in civil matters affecting Indian trust lands, unless Congress provides otherwise. United States Department of the Interior, Federal Indian Law 363 (1958). Section 483a does not confer jurisdiction upon state courts. Furthermore, South Dakota did not assume general civil jurisdiction over Indian lands pursuant to the opportunity granted by Congress in the Act of August 15, 1953, ch. 505, Sec. 6, 67 Stat. 588, 590 (repealed and reenacted 1968) (codified as amended at 25 U.S.C. Sec. 1322), and the state has not acquired jurisdiction since a 1968 amendment to the Act added the requirement of tribal approval. 25 U.S.C. Sec. 1322(a).
 
 
 18
 This is not to say, however, that PCA is left without a forum in which to bring its foreclosure action. PCA has not presented its claim to the Cheyenne River Sioux Tribal Court. Although it appears to us to be the proper forum, the Tribal Court should decide in the first instance whether it has jurisdiction over this foreclosure action. See National Farmers Union Insurance Cos. v. Crow Tribe of Indians, --- U.S. ----, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985).
 
 
 19
 As a final matter, even though the Housing Authority raised the defense of sovereign immunity, we will not reach that issue at this time. The district court apparently did not consider the immunity defense because the dismissal for lack of subject matter jurisdiction rendered such consideration unnecessary. We do not have before us sufficient information to determine whether the Housing Authority, as a tribal agency, is not required to defend this suit. Although sovereign immunity would be a jurisdictional defense, see United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941), we will not remand the issue to the district court for its determination in light of our conclusion that, in any event, the complaint fails to state a federal claim. The Housing Authority may raise the defense anew should PCA pursue its claim in the Tribal Court.
 
 
 20
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable Donald J. Porter, Chief Judge, United States District Court for the District of South Dakota
 
 
 [2]
 The Housing Authority also argues that even if 25 U.S.C. Sec. 483a provided the basis for federal question jurisdiction, PCA has not alleged facts sufficient to bring the claim within the parameters of the statute: there is no allegation that the land in dispute is Indian trust land or located within a reservation or that the Smiths are owners or allottees of Indian trust land. To establish jurisdiction, "federal questions 'must be disclosed upon the face of the complaint.' " Phillips Petroleum Co. v. Texaco Inc., 415 U.S. 125, 127, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974), citing Gully v. First Nat'l Bank, 299 U.S. 109, 113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). We believe the amended complaint alleged sufficient facts to bring the asserted claim within Sec. 483a in that it referred to the mortgaged land as "trust property" and mentioned approval of the mortgage by the Bureau of Indian Affairs. Furthermore, as stated by the district court, it was not disputed that the mortgage covers trust land within the Cheyenne River Sioux Indian Reservation
 
 
 [3]
 This language refers to allotments, parcels of land owned by the United States in trust for individual Indians or owned by individual Indians subject to federally imposed restrictions on alienation. F. Cohen, Handbook of Federal Indian Law 615-16 (rev. ed. 1982) (Handbook). One such restriction, imposed by the Indian General Allotment Act of 1887, ch. 119, Sec. 5, 24 Stat. 388, 389 (codified as amended at 25 U.S.C. Sec. 348), nullifies conveyances or contracts affecting allotments before the trust period ends. Another restriction, under the Appropriations Act of June 21, 1906, ch. 3504, 34 Stat. 325, 327 (codified at 25 U.S.C. Sec. 354), provides that allotted lands shall not "become liable to the satisfaction of any debt contracted" during the trust period. In addition, inducing an Indian "to execute any contract, deed, mortgage, or other instrument purporting to convey any land or any interest therein held by the United States in trust for such Indian" is a criminal offense under the Act of June 25, 1910, ch. 431, Sec. 5, 36 Stat. 855, 857 (codified at 25 U.S.C. Sec. 202). Handbook at 618-19
 
 
 [4]
 PCA asserts that it has "no alternate forum" to support the existence of federal jurisdiction. But this argument, amounting to a bid for default jurisdiction, confuses the issues and does not respond to the real question--whether the complaint states a federal claim. If no federal claim is stated, the federal forum cannot grant relief