**FEDERAL LAND BANK OF
WICHITA, Appellant,**

v.

**Jess L. BURRIS and Joan M.
Burris, Appellees.**

**No. 70012.**

Supreme Court of Oklahoma.

Feb. 6, 1990.

Rehearing Denied May 15, 1990.

David R. Garrison, Garrison and Maddox, Ponca City, for appellant.

F. Browning Pipestem, Stephen A. Lamirand, Pipestem, Carter & Lamirand, Norman, for appellees.

SUMMERS, Justice:

This Court must now decide whether the state courts of Oklahoma have jurisdiction to foreclose on approved mortgages of restricted Indian land. The issue, one of first impression here, is critical not only to lenders who have accepted mortgages on restricted Indian land but also to individual Indians who would borrow money, using as security their restricted Indian land. Our conclusion is that such foreclosure proceedings are authorized in the District Courts of this state.

The Federal Land Bank of Wichita agreed to loan Jess Burris and Joan Burris seventy-five thousand ($75,000.00) dollars in exchange for a mortgage on a farm and ranch in Osage County. The property was owned by Jess, an Osage Indian, but it was and is subject to restrictions on alienation. The mortgage was duly approved by the Commissioner of Indian Affairs, agent of the Secretary of the Interior. Burris failed to make required payments, and the Bank filed a foreclosure petition in the District Court of Osage County.

Burris filed a motion to dismiss, stating that the state court did not have jurisdiction over the foreclosure matter because it involved restricted Indian land. After a hearing the motion was sustained by the district court. The Bank has appealed.

The Bank urges that the lower court erred in dismissing the foreclosure matter because the state has jurisdiction under a federal statute, 25 U.S.C. § 483a, which states:

§ 483a. Mortgages and deeds of trust by individual Indian owners

The individual Indian owners of any land which either is held by the United States in trust for them or is subject to a restriction against alienation imposed by the United States are authorized, subject to approval by the Secretary of the Interior, to execute a mortgage or deed of trust to such land. *Such land shall be subject to foreclosure or sale pursuant to the terms of such mortgage or deed of trust in accordance with the laws of the State or Territory in which the land is located. For the purpose of any foreclosure or sale proceeding the Indian owners shall be regarded as vested with an unrestricted fee simple title to the land,* the United States shall not be a necessary party to the proceeding, and any conveyance of the land pursuant to the proceeding shall divest the United States of title to the land. All mortgages and deeds of trust to such land heretofore approved by the Secretary of the Interior are ratified and confirmed. (Emphasis added)

Burris, on the other hand, submits that Section 483a does not convey to the state jurisdiction over such matters, but merely authorizes Indians to mortgage their trust land with the approval of the Secretary of the Interior. As authority Burris relies on two cases: *Crow Tribe of Indians v. Deernose*, 158 Mont. 25, 487 P.2d 1133 (1971), and *Northwest S.D. Prod. Credit Ass'n v. Smith*, 784 F.2d 323 (8th Cir.1986).

In *Deernose* the Montana Supreme Court addressed the same issue as presented here. A mortgage, approved by the Bureau of Indian Affairs, was issued to the

Crow Tribe by Deernose. Deernose failed to make payments and the Tribe instituted an action in state court to foreclose on the mortgage. The court held that the state did not have jurisdiction over the foreclosure action, and that exclusive jurisdiction rested with the federal courts. The basis of this ruling was that Section 483a "... simply authorizes individual Indians to mortgage lands held in trust by the United States for their use and benefit" and "has nothing to do with granting jurisdiction to state courts in such mortgage foreclosure actions, and pointedly avoids the use of the term 'jurisdiction.'" *Id.* at 1136. *See also Annis v. Dewey County Bank,* 335 F.Supp. 133 (D.S.D.1971).

In *Smith,* the Eighth Circuit Court of Appeals agreed with *Deernose* that Section 483a did not operate to give jurisdiction to the state courts in these actions. However, the court went further to conclude that there is no *federal* cause of action which would have allowed the action to be brought in federal court. The Eighth Circuit Court, in noting that § 483a directs that foreclosure be "in accordance with the laws of the State or Territory in which the land is located," found a strong suggestion that Congress did not intend to create a federal cause of action. The language of the section, it concluded, indicated a congressional "withdrawal of federal involvement in foreclosure proceedings." *Id* at 326. But the Court went on to suggest that the proper forum should be the Cheyenne River Sioux Tribal Court.

The Bank acknowledges these holdings, but urges us to reach a different result in light of the circumstances of this case. *Here, no tribal court exists in which the foreclosure action could be litigated.* If the rule of *Deernose* and *Smith* were adopted, the Bank would have no recourse in the state or federal courts, and because there is no tribal court, the Bank would be without remedy. The Bank urges that such a result is contrary to the intent of

the Congress in enacting Section 483a. From its legislative history we discern:

> ... Its [Sec. 483a's] enactment would encourage individual Indian landholders to utilize commercial credit to the maximum extent possible, under proper supervision ... [S]ome title companies in the Northwest and North Central States have refused to make loans to Indians because they feel present provisions of law do not grant clear and unquestionable authority for such borrowing by Indians and for encumbering the trust lands and related property interests with foreclosurable first mortgages ... It is the policy of the Department to encourage Indians to utilize commercial-credit sources to the maximum extent possible, and in order to do so the Indians need to be able to mortgage their trust land under proper secretarial supervision. Consequently, the objections raised by some of the title insurance companies should be met by legislation that removes any question about the validity and enforceability of such mortgage. 1956 U.S. Code Cong. & Adm. News 2305.

Clearly, the purpose of the legislation was to benefit Indians by allowing them to borrow money, and by permitting banks to make loans secured by land owned by or held in trust for Indians. The Bank argues that the absence of a forum in which to proceed with foreclosure actions will work to the detriment of Indians, because banks will not be inclined to loan money secured by property impervious to foreclosure.

Burris agrees that the Bank will not have a forum in which to proceed with the foreclosure action, but argues that jurisdiction is not a matter of sympathy or favor; the courts are bound to take notice of the limits of their authority. *Reid v. United States,* 211 U.S. 529, 539, 29 S.Ct. 171, 172, 53 L.Ed. 313 (1909). Since the state of Oklahoma did not adopt the laws necessary to assume jurisdiction of Indian lands under what is commonly known as Public Law 280,[1] Burris claims that the state will

---

**1.** Public Law 280 is codified at 18 U.S.C. § 1162, 25 U.S.C. § 1321–1326 and 28 U.S.C. § 1360. For a discussion see *Ahboah v. Kiowa Housing Authority,* 660 P.2d 625, 630–633 (Okl.1983) and

*Citizen Band Potawatomi Indian Tribe v. Oklahoma Tax Commission,* 888 F.2d 1303, 1307 (10th Cir.1989).

exceed its jurisdiction by proceeding in this matter.

To resolve this issue, we first look to the language of the Section 483a. It clearly states that Indian land used as collateral for a secured loan is subject to foreclosure pursuant to the terms of the parties' agreement in accordance with the laws of the state in which the land is located. The agreement states that where federal laws are inapplicable, the enforcement of the promissory note and the mortgage will be governed by the laws of the state in which the real estate is located. O.R. 4. Clearly, federal laws are inapplicable, as there is no federal cause of action for foreclosure in the federal courts. *Smith,* supra.

We then turn to the laws of this state to determine where the action must be brought. The state district courts have jurisdiction over foreclosure matters involving property within the state. Okla. Const. Art. 7, § 7; *Amoskeag Savings Bank v. Eppler,* 182 Okl. 391, 77 P.2d 1158, 1161 (1938); *Fowler v. Marguret Pillsbury Gen. Hosp.,* 102 Okl. 203, 229 P. 442, 444 (1924). "Real property within this State is governed by the law of this State, except where the title is in the United States." 60 O.S.1981, § 21. Title 12 O.S.1981 § 131, which establishes venue, reads as follows:

> Actions for the following causes must be brought in the county in which the subject of the action is situated ...
>
> 3rd, For the sale of real property under a mortgage, lien, or other encumbrance or charge.

Although Section 483a does not use the word "jurisdiction," the statute specifically refers to the laws of the state, and thereby makes foreclosure proceedings in these special cases subject to the substantive law of the state. In addition it treats such land, for foreclosure purposes, as if the owner had an unrestricted fee simple title. Actions in foreclosure on unrestricted land are maintainable in state court. By reading Section 483a in conjunction with existing case law and the aforementioned statutes, it becomes apparent that a foreclosure action under § 483a must be brought in the District Court of Oklahoma in the county in which the land is located.

Our interpretation of Section 483a departs from that found in *Deernose* and *Smith. Deernose* and *Smith* acknowledge that the states have jurisdiction over those matters which the United States Congress has expressly authorized. Those cases found that Section 483a was not an express delegation of jurisdiction over foreclosure matters. What they failed to consider, we believe, were (1) the effect of specifically making foreclosure proceedings subject to the *laws of the State* in which the land was located, and (2) the status in foreclosure of such lands as unrestricted. Instead, they seemed to focus on the fact that the word "jurisdiction" was not used. We must disagree. Whereas the *Smith* court used the statutory language to negate a federal cause of action, we find a stronger likelihood that such language indicated a congressional intention to resolve foreclosure disputes by the laws of the State, which is to say, in those courts designated by the State for resolution of such matters. By incorporating by reference the laws of the state, including 60 O.S.1981 § 21 and 12 O.S.1981 § 131 into the statute, and treating such land in foreclosure as if it were unrestricted, we conclude that Congress has authorized the state courts to proceed in such matters.

This interpretation is consistent with the presumption in law that every provision of a statute is intended for some useful purpose. *R.V. McGinnis Theatres and Pay T.V. v. Video Independant Theatres, Inc.,* 262 F.Supp. 607 (N.D.Okl.1967), *cert. denied,* 390 U.S. 1014, 88 S.Ct. 1265, 20 L.Ed.2d 163 (1968). A statute providing for foreclosure of a department-approved mortgage as if the owner had an unrestricted fee simple title is totally meaningless if there is no forum in which the foreclosure can take place. A reading of the statute in the *Deernose* and *Smith* manner is to conclude that the Congress has done a vain and useless thing except in such localities as where a tribal court may be found. Our interpretation is consistent with the time honored presumption that the legislature has *not* done a vain or useless

thing. *Moral Ins. Co. v. Cooksey*, 285 P.2d 223 (Okl.1955).

Our interpretation is also consistent with the legislative intent to improve the economic well-being of Indians by encouraging them to "utilize commercial credit to the maximum extent possible," while also affording protection to the interests of the lending institutions. 1956 U.S.Code Cong. and Adm.News 2305. It "removes any question about the validity and enforceability of such mortgages." *Id.* at 2306. This interpretation is also supported by the clear indication that Congress did not intend to create a federal cause of action, but instead wanted foreclosure proceedings to be addressed under state law.

We also find persuasive the authority found at 25 U.S.C. § 355 which governs the partition of Indian lands. Section 355 reads in relevant part,

"[t]he lands of full-blooded members of the Five Civilized Tribes are made subject to the laws of the State of Oklahoma providing for the partition of real estate.... In case of a sale under any decree, or partition, the conveyance thereunder shall operate to relieve the land described of all restrictions of every character."

The language of this statute is quite similar to that in Section 483a and does not use the word "jurisdiction"; yet it has been repeatedly interpreted to convey jurisdiction to the State of Oklahoma with regard to partition actions. *Barnett v. Newcomer*, 307 P.2d 148, 153–54 (Okla.1957); *Taylor v. Green*, 191 Okl. 362, 129 P.2d 1013, 1015 (1942).

Before concluding we must note that our decision in no way runs counter to *Ahboah v. Kiowa Housing Authority*, 660 P.2d 625 (Okl.1983), a case relied on by Burris for the proposition that state courts are without jurisdiction over Indian country. In *Ahboah* the land was allotted trust property, leased to the Housing Authority with approval of Secretary of the Interior. The Housing Authority constructed residential housing, which it then leased back to the Indian allottees, also with approval of the Secretary. When the residential tenants

defaulted on rent the Housing Authority brought Forcible Entry and Detainer actions in state court. Relying on 18 U.S.C. § 1151(c) we determined the land to remain Indian country, and found state court jurisdiction wanting. That section provides in pertinent part

"[T]he term 'Indian country' ... means

(c) all Indian allotments, the Indian titles to which have not been extinguished."

*Ahboah* thus holds that such a department-approved transaction did not extinguish the Indian title to the allotted land.

What *Ahboah* did not involve was our Section 483a. Section 483a, which comes into play only when a mortgage of restricted Indian land is approved by the Secretary of the Interior, by its very terms provides that in foreclosure proceedings "the Indian owners shall be regarded as vested with an *unrestricted fee simple title* to the land." (emphasis added). Thus in a foreclosure action controlled by § 483a Congress has expressly extinguished the restricted Indian nature of the title, and in foreclosure the Burris property cannot be considered Indian country under 18 U.S.C. § 1151(c).

In conclusion, we must point out that Section 483a is not a broad grant of jurisdiction to states, but is limited by its own terms to those actions involving foreclosure or sale of restricted Indian land which is the subject of a Department approved mortgage or deed of trust. In specific instances, Congress has seen fit to allow the states to decide controversies involving Indian land, as in the cases of probate and partition matters. *See, e.g., Parnacher v. Mount*, 207 F.2d 788 (10th Cir.1953); *Barnett*, 307 P.2d at 151. In the case of such foreclosure actions, we conclude that Congress has granted the states limited jurisdiction over such matters by way of 25 U.S.C., § 483a, and that such grant of jurisdiction is not only consistent with, but necessary to, the intent of the enacting Congress.

The District Court Order dismissing the cause for lack of jurisdiction is reversed and the case remanded to the District

Court of Osage County for further proceedings.

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, LAVENDER, SIMMS, DOOLIN and ALMA WILSON, JJ., concur.

KAUGER, J., concurs in part; dissents in part.