940 F.2d 333
 The STATE OF NORTH DAKOTA, doing business as the Bank of
North Dakota, Appellee,
v.
John FREDERICKS, Jr., a/k/a John B. Fredericks, Jr., and
Judy Fredericks, husband and wife; Candace T. Fredericks,
a/k/a Candace Fredericks; United States of America, acting
through the Farmers Home Administration, United States
Department of Agriculture; Southwest Grain Cooperative;
Lorene Siedel; and Woody's Feed and Grain Co., Appellants.
 No. 90-5262.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 13, 1991.
Decided July 31, 1991.
 
 Irvin B. Nodland, Bismarck, N.D., for appellants.
 Lawrence R. Klemin, Bismarck, N.D., for appellee. Nicholas J. Spaeth and Lawrence R. Klemin, Bismarck, N.D., on the brief.
 Before LAY, Chief Judge, McMILLIAN and ARNOLD, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 From this foreclosure action comes a nice question of the removal jurisdiction of the federal courts. The District Court[1] upheld its own jurisdiction and foreclosed the mortgage. John Fredericks, Jr., and his family, the borrowers, appeal. No question is raised as to the merits. Appellants contend only that the District Court lacked jurisdiction. We affirm.
 
 I.
 
 2
 The Frederickses borrowed money, giving as security mortgages on the approximately 3,000 acres they farm. The lenders are, among others, the Bank of North Dakota, a state agency, and the Farmers Home Administration, an agency of the United States. The borrowers are Native Americans. Their land is located in Dunn County, North Dakota, within the Fort Berthold Indian reservation.
 
 
 3
 The case now before us began as a suit to foreclose the mortgage brought in a North Dakota state court by the Bank of North Dakota as first mortgagee. In order to understand the situation fully, however, it is necessary to recite briefly the circumstances of two previous lawsuits. The first case arising out of the borrower's default was brought by the Frederickses themselves. The bank was about to proceed to foreclose by advertisement, see N.D.C.C. Sec. 35-22-01. The borrowers sued the bank in a North Dakota state court, seeking to compel them to foreclose by suit, instead of by the nonjudicial process of advertisement. The state court agreed, and an injunction (apparently still in effect) was granted.
 
 
 4
 The bank then filed suit to foreclose the mortgage in the court below. The Frederickses claimed that the District Court had no jurisdiction, and Chief Judge Conmy agreed. No federal statute, he held, creates a federal right of action to foreclose mortgages on Indian trust lands, and 28 U.S.C. Sec. 2410, which waives the sovereign immunity of the United States in actions involving title to Indian lands, is not an independent basis of federal jurisdiction. Accordingly, the District Court had no original jurisdiction over the bank's suit to foreclose, and the complaint was dismissed. North Dakota v. Fredericks, A1-87-204 (D.N.D. March 21, 1988) (unpublished order). The District Court relied chiefly for this result on our opinion in Northwest South Dakota Production Credit Association v. Smith, 784 F.2d 323 (8th Cir.1986).
 
 
 5
 The bank, thus stymied in its attempt to invoke the original jurisdiction of the federal district courts, returned to the state courts. It first moved to have the injunction against foreclosure by advertisement dissolved. The Frederickses successfully resisted this motion. Then the bank filed the present suit, seeking to foreclose the mortgage by normal judicial procedure. Among the defendants named were the Frederickses themselves and the Farmers Home Administration. This time, the borrowers answered that the state court (like the federal District Court) lacked jurisdiction. The only court with jurisdiction, they argued, would be the Fort Berthold Tribal Court. The state court (perhaps recalling that the borrowers themselves had initially invoked its powers) rejected this jurisdictional defense. The borrowers then filed a cross-claim against FmHA, claiming that its breach of a contract to lend them more money was the cause of their default on the first mortgage held by the Bank of North Dakota.
 
 
 6
 The United States, having been, in effect, sued twice, once as an originally named defendant and once as a defendant on the cross-claim, filed a petition to remove the case to the District Court. The District Court upheld the removal under 28 U.S.C. Sec. 1444. The borrowers then dismissed their cross-claim against FmHA. They also asserted that the District Court lacked jurisdiction even on removal. At this point, the bank agreed, relying on the fact that FmHA was no longer a defendant on the cross-claim. The District Court disagreed with both parties, noting the continued presence of an agency of the United States, in its capacity as a junior lienholder, as an originally named defendant. The Court then foreclosed the mortgage. North Dakota v. Fredericks, Civil No. A1-89-017 (D.N.D. Feb. 12, 1991, March 29, 1990, April 25, 1990) (unpublished orders). The farm has now been sold at a sheriff's sale, but the period of redemption under state law has not yet run, so the case is not moot.
 
 II.
 
 7
 On appeal, the Frederickses renew their contention that the District Court lacked removal jurisdiction. The Bank of North Dakota, having succeeded on the merits, has now reversed its field and argues that jurisdiction is proper. The United States has apparently lost interest in the case. It has filed only a letter brief in this Court, and that came only after our invitation to express its views on jurisdiction. The government takes the position that the removal was proper and that the District Court had jurisdiction to foreclose the
 
 
 8
 mortgage.
 
 
 9
 If the District Court had jurisdiction, it is because of 28 U.S.C. Sec. 1444, one of the removal statutes. This section, styled "Foreclosure action against United States," reads as follows:
 
 
 10
 Any action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending.
 
 
 11
 The statute thus referred to, 28 U.S.C. Sec. 2410, reads in pertinent part as follows:
 
 
 12
 Under the conditions prescribed in this section and in section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any state court having jurisdiction of the subject matter....
 
 
 13
 On their face, these two statutes, when read together, appear clearly to confer removal jurisdiction on the District Court. This is an action brought against the United States in a state court to foreclose a mortgage, and the United States seeks to remove the action to a federal district court "for [its] protection." The borrowers attack the apparent meaning of the statutes on two related but distinct bases.
 
 
 14
 First. Though claiming otherwise, the Frederickses, in effect, invoke an old doctrine referred to as "derivative jurisdiction." Because of the Indian nature of the subject matter, they say, the state court itself lacked jurisdiction over the suit brought by the bank. (Never mind the apparent unfairness of this argument when one recalls that it was the borrowers themselves that initially, and successfully, called upon the state courts for aid.) A federal court on removal, the argument continues, can have no jurisdiction if the state court where the suit began had none.
 
 
 15
 Certainly there was at one time a well established doctrine to this effect, and a number of cases so held. "The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction." Lambert Run Coal Co. v. Baltimore & Ohio R.R., 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922). "[T]he plaintiff should have a care that the state court has the necessary jurisdiction to furnish the stock on which to graft" the federal proceedings. Fidelity Trust Co. v. Gill Car Co., 25 Fed. 737, 740 (C.C.S.D.Ohio 1885). The doctrine of derivative jurisdiction was even invoked to accord federal officers what amounted to absolute protection from suit in either state or federal court for acts arising out of their official duties. Where there was no basis for federal jurisdiction as an original matter, and where a federal officer availed himself of removal under 28 U.S.C. Sec. 1442(a)(1) because of the official nature of his challenged acts, the suit would be dismissed and the plaintiff left without his remedy. See, e.g., Pennsylvania Turnpike Comm'n v. McGinnes, 179 F.Supp. 578 (E.D.Pa.1959), aff'd per curiam, 278 F.2d 330 (3d Cir.), cert. denied, 364 U.S. 820, 81 S.Ct. 57, 5 L.Ed.2d 51 (1960), discussed in Arnold, The Power of State Courts to Enjoin Federal Officers, 73 Yale L.J. 1385, 1393 (1964) (describing this result as "curious").
 
 
 16
 The argument runs into a major difficulty. The doctrine of derivative jurisdiction, never based on anything explicit in the removal statutes, but rather a judicial gloss upon them, has now been overruled by Congress. The Judicial Improvements Act of 1985, 100 Stat. 633, has removed this "caselaw gloss" from the law of removal. H.R.Rep. No. 99-423, 99th Cong., 1st Sess. 13 (1985), U.S.Code Cong. & Admin.News 1986, p. 1545. One need not look far for a reason. Consider the following example: suppose someone sued you in a state court claiming infringement of a patent. Realizing that such matters are inherently federal, you file a petition for removal. The federal court, however, refuses to entertain the case. Federal district courts have original and exclusive jurisdiction of patent-infringement cases. The state court therefore had no jurisdiction at all, and the federal court on removal, as a sort of off-shoot of the state court, can have none, either. The result is that a federal court refuses to entertain a case over which only it has jurisdiction. Presumably, the plaintiff then refiles in the federal court, or you, as defendant, file suit for declaratory judgment in that court, so in the end the federal court will decide the dispute. Congress acted in 1985 to repeal this doctrine because it realized that it made no sense. The only effect (assuming the statute of limitations, or some other intervening reason, wasn't a bar to the new action) was to multiply proceedings. This kind of rigmarole is unworthy of a civilized judicial system.
 
 
 17
 All this the Frederickses acknowledge. They point out, though, that the 1985 statute did nothing more than add a new subsection (e) to 28 U.S.C. Sec. 1441. The new subsection is limited in so many words to cases removed under Sec. 1441, a category of cases having in common the fact that the federal court would have had original jurisdiction of the suit. The new statute says nothing about removals under other sections of the Judicial Code, notably Sec. 1444. Therefore, borrowers conclude, the doctrine of derivative jurisdiction still lives with respect to all removals not within the terms of Sec. 1441.
 
 
 18
 We agree with the borrowers that the 1985 Act, in and of itself, says nothing about non-1441 removals. It says a lot, however, about Congress's general attitude towards the now-discredited theory of derivative jurisdiction. Probably there was never any good reason for the theory: if Congress wanted a federal forum for suits involving the United States, as it clearly does, why should it matter that the state court in which the suit was originally commenced was without jurisdiction? Presumably the federal official sued could have asserted this lack of jurisdiction as a defense. The government may choose instead, to remove the case, seeking the protection of a federal forum. There is no good reason why this choice should not be honored. (We are assuming here that the state court in fact lacked jurisdiction. In view of our analysis, it is unnecessary to confront that question directly.)
 
 
 19
 Apparently, though, the doctrine of derivative jurisdiction was so well entrenched that judges felt unable to do away with it on their own, notwithstanding the fact that it was originally created not by Congress but by the courts. Whatever one might think about this sort of reticence, the recent action of Congress has removed any justification for it. It is true that the unreason of the doctrine of derivative jurisdiction is most keenly apparent in Sec. 1441 cases, cases that could have been brought as original actions in the federal forum. In this sense, Sec. 1444 removals are distinguishable. As this Court held in Smith, supra, suits to foreclose mortgages on Indian lands are not within the original jurisdiction of the federal district courts.[2] The distinction, however, does not help the argument against removal jurisdiction. The whole purpose of that jurisdiction is to give the government the option of proceeding in its own courts. The fact that some other court, here, the state court from which the case was removed, might not have had jurisdiction is supremely irrelevant to this purpose. Accordingly, the policy of Congress underlying new Sec. 1441(e) supports the complete abandonment of the derivative-jurisdiction theory, even though the words of the statute clearly do not reach this far.
 
 
 20
 In reaching this result we are mindful of a judicial technique that goes by the name of "the equity of the statute." This phrase, which was used by lawyers and judges at least as early as the 15th century, means something like this: statutes are an authoritative expression of public policy. That policy should be hospitably received by the courts, and they are free to apply it, absent good reasons to the contrary, in cases within the spirit of the enactment, but not within its letter. Sir Edward Coke put it this way:
 
 
 21
 "Equitie" is a construction made by the judges, that cases out of the letter of a statute, yet being within the same mischiefe, or cause of the making of the same, shall be within the same remedie that the statute provideth....
 
 
 22
 Co.Litt., Lib. 1, C. 2, Sec. 21, f. 24b. Or, as Dean Landis put it in a pioneering article, a statute can be a "nursing mother of the law," Landis, Statutes and the Sources of Law, in Harvard Legal Essays Written in Honor of and Presented to Joseph Henry Beale and Samuel Williston 213, 214 (R. Pound ed. 1934), reprinted in 2 Harv.J. on Legis. 7, 8 (1965). This principle enables "judges to distill from a statute its basic purpose," and they can "then employ it to slough off the archaisms in their own legal structure." Id. at 216 and 10.
 
 
 23
 A good example is the treatment given by many American courts to the married women's legislation of the last century. The statutes themselves, generally, were limited: they did no more than grant to married women the power to hold and convey property and to sue and be sued. Many courts, however, took their cue from the policy thus expressed by the legislature. They felt free to re-make settled common-law doctrine, for example, by abrogating the common-law rule that a husband was liable for the antenuptial contracts and torts of his wife. See id. at 223-24 and 16-17. See also Loyd, The Equity of a Statute, 58 U.Pa.L.Rev. (O.S.) 76 (1909).
 
 
 24
 Obviously such a doctrine can be pushed too far. It should never be used by courts to thwart legislative policy, but only to advance it in areas not within the strict letter of the statute, and, even then, only when there are no important countervailing arguments. The present case, we think, is well suited to this kind of use of a legislatively declared policy. Removal is entirely a creature of statute. Congress has regulated it in detail ever since the enactment of Section 12 of the Judiciary Act of 1789, 1 Stat. 79-80. If there were no removal statutes, there would be no removal. The derivative-jurisdiction doctrine owes its origin to nothing whatever in the removal statutes themselves, but rather to the formalistic conception, entirely divorced from reality, that a case originally filed in a court without jurisdiction is doomed to be a nullity forever, even after transfer to a completely different forum. Compare, for other Congressional pronouncements at odds with such a notion, 28 U.S.C. Sec. 1653 (federal court without jurisdiction of a case may transfer it to another federal court with jurisdiction), Sec. 1406 (federal court where venue is improperly laid, even if it is without jurisdiction of the person of a defendant, may in the interest of justice, instead of dismissal, transfer the case to another federal court where venue and jurisdiction would have been proper as an original matter). Congress has now condemned the doctrine, but its words reach only those cases where the theory's bankruptcy is most apparent. Congress has thus given us more than a hint, and we think we can apply its policy to other kinds of removal without being justly accused of unwarranted activism. Accordingly, we hold that the doctrine of derivative jurisdiction, as applied to defeat removals, should be abandoned completely. The doctrine is no bar to the Sec. 1444 removal that took place in this case.
 
 
 25
 Second. The borrowers' other argument is a variant of the first, but anchored in the words of 28 U.S.C. Sec. 2410. That statute, they emphasize, allows the United States to be sued not in any and all state courts, but only "in any state court having jurisdiction of the subject matter...." Here, the state court, we are assuming, had no jurisdiction of the subject matter. This case, therefore, is not "brought under section 2410" within the meaning of Sec. 1444, and removal under that section is improper.
 
 
 26
 So far as grammar and the literal meaning of words are concerned, we are free to accept this argument. But we are not forced to do so. If you file a pleading in a state court and invoke 28 U.S.C. Sec. 2410 as your basis for joining the United States as a defendant, and if the state court, either for jurisdictional reasons or on the merits, ultimately holds against you, it does not necessarily follow that your action was not "brought under section 2410." That section, as it turned out, did not apply; your case was not brought properly under it; and you are out of court. But your complaint did plead Sec. 2410 as a basis for jurisdiction, and, at least where the allegation is not frivolous on its face, there is a sense in which the case is "brought under" that section.
 
 
 27
 We think the words "brought under" should be understood in the present case in this broader, but still verbally tenable, sense. Remember, again, that the purpose of the section is to protect the United States, and that it is the United States which removed this case from the state court. The sovereign has a strong interest in the availability of its own courts. "The cardinal concern of the United States is that all cases in which the interest of the government are involved may be tried in federal fora." Hood v. United States, 256 F.2d 522, 525 (9th Cir.1958) (Sec. 1444 allows removal of a claim that did not satisfy the dollar requirements of the federal-question statute then in effect). To interpret the words "brought under" as the borrowers argue would do one of two things: either force the United States to be a defendant in the courts of another sovereign, the Fort Berthold tribe, or make it impossible for all of the parties in interest in this matter to be joined in a single action. (We are not sure that the United States has waived its sovereign immunity against suit in the tribal court; if it has not, there may be no court (or at least no convenient court--the Claims Court may be a possibility) in which all parties can be joined.) We conclude that the "brought under" phrase in Sec. 1444 is not a bar to removal jurisdiction in this case.
 
 III.
 
 28
 In short, the District Court had jurisdiction, and its orders of foreclosure are affirmed. In reaching this result, we have admittedly been heavily influenced by the notion that some court should be able to decide this case on its merits, without circuity or multiplicity of suits. Because one of the parties is a federal agency, it is natural to expect that court to be a court of the United States. We have not, however, simply applied our ideas of "policy." We have interpreted the legislative language and assessed the present-day utility of a doctrine created by 19th-century judges with current legislative policies in mind. We take no action that the words of the relevant statutes will not bear.
 
 
 29
 Affirmed.
 
 
 
 [1]
 The Hon. Patrick A. Conmy, Chief Judge, United States District Court for the District of North Dakota
 
 
 [2]
 We note that neither the United States nor any of its agencies was a defendant in Smith. Federal courts do have original jurisdiction under 28 U.S.C. Sec. 1346(a)(2) of actions against the United States based on contract. Possibly this case, or at least that portion of it represented by the (now dismissed) cross-claim of the borrowers against FmHA, could be brought within this provision. However, because the amount in controversy exceeds $10,000, jurisdiction would be in the United States Claims Court, not in a federal district court