**Joseph MORELAND and Rosalie Moreland, Plaintiffs,**

v.

**VAN BUREN GMC and Long Island Sanitation Equipment, Inc., Defendants.**

**Long Island Sanitation Equipment, Inc., Third–Party Plaintiff,**

v.

**United States Merchant Marine Academy and Department of Transportation, Third–Party Defendants.**

**Van Buren GMC, Second Third–Party Plaintiff,**

v.

**United States of America, Second Third–Party Defendant.**

**No. CV95–0914(DRH).**

United States District Court, E.D. New York.

July 23, 1999.

348

Wolf & Fuhrman, New York City by Scott A. Wolinetz, for Plaintiffs.

Zachary Carter, Brooklyn, NY by Sandra A, Levy, Assist. U.S. Atty, for U.S.

Law Offices of Steven L. Wittels, Armonk, NY by Steven L. Wittels, for Defendant/Third–Party Plaintiff Van Buren GMC.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Pending before the Court is the motion of Third–Party Defendants United States Merchant Marine Academy (the "Academy") and Department of Transportation ("DOT") and Second Third–Party Defendant United States of America (the "United States") (sometimes hereinafter collectively referred to as the "Government") to (1) dismiss this action as against them for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (2) remand the action to the Nassau County Supreme Court, pursuant to 28 U.S.C. § 1447(c). For the reasons that follow, the motion is granted.

## BACKGROUND

### I. Factual Background

Plaintiff Joseph Moreland ("Mr.Moreland"), now retired, was a motor vehicle operator employed by the Academy. On May 28, 1992, Mr. Moreland was operating a garbage compactor located in the rear of a sanitation vehicle owned by the Academy. According to Plaintiffs, the vehicle spontaneously shifted out of neutral gear into reverse. In the midst of Mr. Moreland's unsuccessful attempt to deactivate the compactor blade, the blade descended down, slicing off a portion of his left fourth finger. As a result of the accident, Mr. Moreland's left fourth finger was partially

amputated; he further suffered contusions to his left third and fourth fingers.

On August 31, 1992, Plaintiffs commenced suit in Queens County Supreme Court against Van Buren GMC ("Van Buren") and Long Island Sanitation Equipment, Inc. ("LIS"), contending, *inter alia,* that they were negligent in maintaining and servicing the sanitation vehicle and its various component parts. By Order dated October 12, 1993, Queens County Supreme Court Justice Joscelyn E. Smith transferred the action to Nassau County Supreme Court. On or about January 20, 1995, LIS commenced a third-party action for indemnity and contribution against the Academy and the DOT (hereinafter collectively the "Third–Party Defendants").

On March 7, 1995, Third–Party Defendants removed the entire action to this Court. In their Notice of Removal, Third–Party Defendants invoked 28 U.S.C. § 1441(a) (authorizing removal of action where such action could have been brought in federal district court in the first instance) and 28 U.S.C. § 1442(a)(1) (authorizing removal of action where United States or agency thereof named as defendant). On August 2, 1996, Magistrate Judge Arlene R. Lindsay granted Van Buren's motion for leave to file a second third-party action. The Second Third–Party Complaint, which named the "United States" as Second Third–Party Defendant, similarly seeks indemnity and contribution.

## II. The Court's February 10, 1998 Memorandum and Order

In May 1997, LIS and Van Buren moved for summary judgment on Plaintiffs' claims, pursuant to Rule 56(b). By Memorandum and Order dated February 10, 1998 (hereinafter *"Moreland I "*), the Court, acting *sua sponte,* raised the question of its subject matter jurisdiction over this action, and, more pointedly, questioned the propriety of the removal of this action from the Nassau County Supreme Court.

The Court concluded that 28 U.S.C. § 1441(a) afforded no basis for removal by the Academy and the DOT, as that subsection applied only to original defendants. *Moreland I* at 6–8. The Court further concluded that, assuming, *arguendo,* that 28 U.S.C. § 1441(c) conferred removal rights upon third-party defendants, removal was nonetheless improper under that subsection "because the third-party claims did not constitute a "separate and independent" action." *Id.* at 13.

The Court then proceeded to address the propriety of removal under 28 U.S.C. § 1442(a)(1). At the time this action was removed, the Court noted, removal by a federal agency was unauthorized under Section 1442(a)(1), pursuant to the holding in *International Primate Protection League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, 79–80, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). *Moreland I* at 15. On October 19, 1996, however, some nineteen months after this action was removed, Congress enacted the Federal Courts Improvement Act of 1996 (the "Federal Courts Act"), Pub.L. No. 104–317, 11 Stat. 3847. Among the provisions of the Federal Courts Act was an amendment to Section 1442(a)(1); the newly-revised Section 1442(a)(1) specifically authorizes removal by a federal agency.

The Court then posed the following question: "Should [it] apply the present version of Section 1442(a)(1) to this action, and, accordingly, find that removal jurisdiction under Section 1442(a)(1) was properly invoked?" *Moreland I* at 16. Assuming, *arguendo,* that the present version of Section 1442(a)(1) were applied properly to this case, that is, that the newly-amended statute had no retroactive effect, the Court further noted that the doctrine of derivative jurisdiction appeared to prevent this Court's acquisition of subject matter jurisdiction over the action.

Accordingly, the Court directed the parties to further brief these issues. The Government responded via its present mo-

tion to dismiss the claims as against it and remand the action to the Nassau County Supreme Court.

## DISCUSSION

### I. Propriety of Removal Under Section 1442(a)(1)

#### A. Applicability of Section 1442(a)(1) Removal to Third–Party Defendants

■ As a threshold matter, because removal under Section 1442 rests upon "far stronger considerations of policy" than removal under Section 1441.[1] *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir.1960), courts have uniformly permitted third-party defendants to remove under Section 1442(a)(1). *See, e.g., Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Maine Dep't of Human Services*, 876 F.2d 1051, 1055 (1st Cir.1989); *Smith v. City of Picayune*, 795 F.2d 482, 485 (5th Cir.1986); *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir.1984); *Reese v. South Florida Water Management*, 853 F.Supp. 413, 414 (S.D.Fla.1994); *National Ctr. for Hous. Management v. Housing Auth. of Milwaukee*, 668 F.Supp. 1230, 1231 (E.D.Wis.1987). Accordingly, the Court concludes that third-party defendant status does not defeat removal under Section 1442(a)(1).

#### B. Application of Newly–Revised Section 1442(a)(1) Generally

■ As referenced previously, the Federal Courts Act, enacted some nineteen months after this action was removed, amended Section 1442(a)(1) to authorize removal by federal agencies under that subsection.[2] The question then arises whether the Court should apply the newly-revised version of Section 1442(a)(1) when addressing the propriety of the Third–Party Defendants' removal of this action. In making this determination, "the court's first task is to [ascertain] whether Congress expressly prescribed the statute's proper reach." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

The Government—joined by Van Buren [3]—initially argues that Congressional intent to apply newly-revised Section 1442(a)(1) to pending cases can be inferred from the legislative history of the Federal Courts Act. Alternatively, the Government contends that in the absence of such Congressional intent, the amendment to Section 1442(a)(1) does not have retroactive effect, and therefore should be applied in the instant case. Plaintiff, however, argues that "since Congress did not clearly show that [the] statute should be applied retroactively and in light of the 'presumption against retroactive legislation' ... [the] statute should not be applied retroactively." (Pls.' Mem. of Law at 10 (citation omitted).)

■ Notwithstanding the parties' respective arguments, the Court concludes that Congress did not expressly prescribe the reach of newly-amended Section 1442(a)(1). "Absent a clear expression of Congressional intent, ... 'the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties

---

1. *See, e.g., Louisiana v. Sparks*, 978 F.2d 226, 232 (5th Cir.1992) ("[T]he Supreme Court has for over two decades required a liberal interpretation of § 1442 in view of its chief purpose—to prevent federal officers who simply comply with a federal duty from being punished by a state court for doing so.") (citing *Willingham v. Morgan*, 395 U.S. 402, 406–407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)).

2. There is no dispute that both the Academy and the DOT are federal agencies within the meaning of Section 1442(a)(1).

3. Van Buren joins the Government's arguments that (1) the 1996 amendment to Section 1442(a)(1) applies to this action and (2) this action was properly removed under that subsection. It parts company with the Government, however, on the issue of derivative jurisdiction.

with respect to transactions already completed.'" *Organizacion JD LTDA v. United States Dep't of Justice*, 124 F.3d 354, 357 (2d Cir.1997) (quoting *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483). "If application of the amended statute would have such a retroactive effect, 'then [the Court] presumes it will not apply to ... conduct ... which occurred prior to its effective date.'" *Organizacion JD LTDA*, 124 F.3d at 357 (quoting *Hughes Aircraft Co. v. United States ex rel. William J. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 1876, 138 L.Ed.2d 135 (1997)).

In *Landgraf*, the Supreme Court observed that it had "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Landgraf*, 511 U.S. at 274, 114 S.Ct. 1483; *see also Bruner v. United States*, 343 U.S. 112, 116–17, 72 S.Ct. 581, 96 L.Ed. 786 (1952) ("T[he] rule—that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law—has been adhered to consistently by this Court."). The Court noted that new jurisdictional rules will normally be applied to pending cases because they "usually 'take away no substantive right but simply change[ ] the tribunal that is to hear the case.'" *Landgraf*, 511 U.S. at 274, 114 S.Ct. 1483 (quoting *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409 (1916)), and, consequently, " 'speak to the power of the court rather than to the rights or obligations of the parties.'" *Landgraf*, 511 U.S. at 274, 114 S.Ct. 1483 (quoting *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 100, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Thomas, *J.*, concurring)).

Moreover, the High Court has had occasion to address the specific procedural posture present in this case, namely, whether a new Congressional enactment may supply a federal court with jurisdiction where it is otherwise lacking. In *Andrus v. Charlestone Stone Prods., Inc.*, 436 U.S.

604, 607–08 n. 6, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978), the Court noted that the respondent had failed to allege in his 1973 complaint that there was $10,000.00 in controversy, as required at that time under the general federal question statute. The Court found this to be "of no moment," however, because by the time the case had made its way there, a 1976 amendment to the general federal question statute had eliminated the amount in controversy requirement in actions brought against the United States. *Id.*

Similarly, in *United States v. Alabama*, 362 U.S. 602, 603, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960), the Fifth Circuit Court of Appeals had affirmed the dismissal of a civil rights action against the State of Alabama on the ground that the Civil Rights Act of 1957 did not authorize such an action against the State. The Supreme Court reversed, noting that just prior to oral argument of the case before the Supreme Court, Congress enacted a statute specifically authorizing the maintenance of such an action against a State. *Id.* at 604, 80 S.Ct. 924. Therefore, the Court held, the district court had subject matter jurisdiction over the action. *Id* ; *see United States v. Certain Funds*, 96 F.3d 20, 24 (2d Cir.1996) (applying new jurisdictional provision of civil forfeiture statute providing federal courts with jurisdiction over overseas res, explaining that "[t]he secondary conduct here is the court's power—its jurisdiction—over the res located overseas. Quintessentially procedural, jurisdiction statutes have often been accorded retroactive application."); *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1425 (9th Cir.1989) (applying new provision directing courts to disregard fictitious defendants for purposes of diversity jurisdiction).

Moreover, while the Court in *Moreland I* observed that "[t]he issue of whether the 1996 amendment to Section 1442(a)(1) should be applied to salvage an otherwise jurisdictionally-defective removal notice appears to be one of first impression not only in the Second Circuit, but throughout

the nation," the Ninth Circuit Court of Appeals, in a decision issued subsequent to *Moreland I*, has squarely addressed the issue:

> Because § 1442 is a statute which regulates jurisdiction and procedure, the new law applies to cases pending at the time of its enactment. Thus, since this case was brought against an agency of the United States, it was removable under § 1442 as amended.

*State of Nebraska ex rel Department of Social Servs. v. Bentson*, 146 F.3d 676, 678 (9th Cir.1998) (citing *Landgraf*, 511 U.S. at 274–75, 114 S.Ct. 1483).

In light of the foregoing, the Court concludes that the 1996 amendment to Section 1442(a)(1) applies in this case.

## C. Application of Section 1442(a)(1) in the Instant Case

■ Plaintiffs maintain that, assuming newly-revised Section 1442(a)(1) applies, Third–Party Defendants nevertheless fail to meet the requirements of that subsection. Specifically, Plaintiffs claim that the Academy and the DOT (1) "were not sued for any act under color" and (2) cannot establish a "causal connection between [their] actions under supposed official authority and the lawsuit against them, as they have not been sued under any act of color." (Pls.' Mem. of Law at 4, 6.) The Government rebuts that its "defense that the actions alleged to be negligent were taken in the performance of the federal actor's duties, and that the indemnification or contribution claim, if any, arises out of such actions, is the 'federal defense' that makes this case removable under Section 1442(a)(1). The federal law governing any such claim is the Government's limited waiver of immunity under the Federal

Tort Claims Act." (Gov't's Reply Mem. at 3.)

■ There is a dearth of authority addressing the requirements for removal by a federal agency—as opposed to a federal officer—under Section 1442(a)(2). Adapting the requirements for federal officer removal under Section 1442(a)(1) to the context of federal agency removal, the Third–Party Defendants must sufficiently allege that (1) they are federal agencies, (2) there exists a "causal connection" between the alleged conduct and the asserted official authority and (3) they have a "colorable" federal defense to the claim. *See Gilberg v. Stepan Co.*, 24 F.Supp.2d 325, 347 (D.N.J.1998) (citing *Mesa v. California*, 489 U.S. 121, 124–37, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)).

Turning to the case at bar, both the Third–Party Complaint and the Third–Party Defendants' Notice of Removal aver that the Academy and the DOT are federal agencies. Moreover, in a civil case such as this, Third–Party Defendants can establish a causal connection by showing that their relationship to LIS (the Third–Party Plaintiff) "derived solely from their official duties." *Willingham*, 395 U.S. at 409, 89 S.Ct. 1813. In its Third–Party Complaint, LIS seeks indemnification and/or contribution from Third–Party Defendants, under the Federal Tort Claims Act ("FTCA"), in the event LIS is found liable for Plaintiffs' injuries, on the ground that such injuries were caused by Third–Party Defendants' negligence. While Plaintiffs assert that Third–Party Defendants were not sued for "any act under color," the Court is at a loss to understand how a federal agency—again, as opposed to a federal official—can act in any way but "under color" or "officially." [4] In any event, a review of the

---

4. In *International Primate Protection League*, the Supreme Court, in holding that federal agencies had no removal rights, touched upon this issue by discussing the situational difference between a defendant federal agency and a defendant federal officer. Specifically, the Court noted that while the determination of

an agency's immunity from suit "was sufficiently straightforward that a state court, even if hostile to the federal interest, would be unlikely to disregard the law, ... [d]etermining whether a federal officer had acted *ultra vires* was fraught with difficulty and subject to

Removal Notice, as well as the pleadings incorporated by reference therein, makes it apparent that the challenged conduct on the part of the Academy and the DOT "derived solely from their official duties." As to the final requirement under Section 1442(a)(1), namely, a colorable federal defense, Third–Party Defendants, both of which indisputably are "federal agencies" within the meaning of 28 U.S.C. § 2671, are absolutely immune from suit under the FTCA. *See* 28 U.S.C. §§ 2679(a), 1346(b); *see also Willingham,* 395 U.S. at 407, 89 S.Ct. 1813 ("[O]ne of the most important reasons for removal is to have the validity of the [federal] defense of official immunity tried in a federal court.")

Accordingly, the Court holds that Third–Party Defendants properly removed this action.[5]

## II. Derivative Jurisdiction

■ Having determined that this action was properly removed, the Court proceeds to address whether it has subject matter jurisdiction over this action. *See Bentson,* 146 F.3d at 679 ("A defendant's power to remove a case to federal court is independent of the federal court's power to hear

it.... Once a case is properly removed, a district court has the authority to decide whether it has subject matter jurisdiction over the claims."). The derivative jurisdiction doctrine holds that if the state court where an action was initially commenced lacked subject matter jurisdiction over the action, a federal court acquires none upon removal. *Minnesota v. United States,* 305 U.S. 382, 389, 59 S.Ct. 292, 83 L.Ed. 235 (1939). "This result obtains even if the reason the state court lacked jurisdiction is that the complaint lies within the exclusive jurisdiction of the federal courts." *Nordlicht v. New York Tel. Co.,* 799 F.2d 859, 863 (2d Cir.1986).

Here, it is undisputed that the Nassau County Supreme Court lacked jurisdiction over the Third–Party action, as claims under the FTCA lie within the exclusive jurisdiction of the federal courts. *See* 28 U.S.C. § 1346(b)(1). In *Moreland I,* however, the Court noted that Congress abolished the derivative jurisdiction doctrine in 1986 by adding subsection (e) to 28 U.S.C. § 1441. That subsection provides that "[t]he court to which such civil action is removed is not precluded from hearing and determining any claim in such civil

considerable manipulation." 500 U.S. at 85–86, 500 U.S. 72.

In point of fact, in the context of the FTCA, Congress enacted the Federal Employees Liability Act Reform and Tort Compensation Act of 1988, Pub.L. 100–694, 102 Stat. 4563 (1988), which extended to federal employees absolute tort immunity for acts committed within the course and scope of their employment. *See United States v. Smith,* 499 U.S. 160, 163, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991). Under present law, once the Attorney General certifies that a federal employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," any action or proceeding commenced against the federal employee in state court "shall be removed without bond." 28 U.S.C. § 2679(d)(2).

5. Assuming, *arguendo,* that the action was improperly removed under Section 1442(a)(1), the question would then arise whether, given the undisputed fact that the State court has no jurisdiction over the Third–Party action,

the Third–Party and Second Third–Party Complaints should nevertheless be dismissed, as opposed to remanded under 28 U.S.C. § 1447(c). The law in this Circuit as regards a potential "futility" exception to Section 1447(c), however, appears to be in flux. *See Mignogna v. Sair Aviation, Inc.,* 937 F.2d 37, 41–43 (2d Cir.1991) (noting in action under FTCA that "remand might be improper if it would be futile, ... as it would be if the state court could not exercise jurisdiction over [the improperly removed claim]" but going on to remand claim where "it [was] not certain" state court jurisdiction barred in event of remand). *But cf. Barbara v. New York Stock Exch.,* 99 F.3d 49, 56 n. 4 (2d Cir.1996) ("Although we have indicated that we might be willing to entertain the futility exception, ... it should be noted that the Supreme Court, in commenting upon the possibility of such an exception, took 'note ... of the literal words of § 1447(c), which, on their face, give ... no discretion to dismiss rather than remand an action.'" (quoting *International Primate,* 500 U.S. at 89), 111 S.Ct. 1700 (citation and internal quotation marks omitted)).

action because the State court from which such civil action is removed did not have jurisdiction over that claim."

■ The question then arises whether Section 1441(e) should be extended to cover removals under Section 1442(a)(1). The Government contends that "fundamental principles of statutory construction require the conclusion that Congress abolished derivative jurisdiction *only* as to Section 1441 and that the doctrine remains applicable to cases removed under Section 1442(a)(1)." (Gov't's Reply Mem. of Law at 7–8.) Van Buren rebuts that "[n]either precedent nor common sense support the government's position." (Van Buren Mem. of Law at 3.) While cognizant of the plethora of criticism directed at the derivative jurisdiction doctrine, *see, e.g., North Dakota v. Fredericks,* 940 F.2d 333, 336, 338 (referring to doctrine as "caselaw gloss"), which ultimately culminated in the enactment of new Section 1441(e), the Court nonetheless concludes that the doctrine remains intact with respect to removal under Section 1442(a)(1).

■ It is well-settled that "the starting point in statutory interpretation is the language [of the statute] itself." *Ardestani v. INS,* 502 U.S. 129, 135–36, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (citation omitted). As noted by the Government, the plain language of Section 1441(e) indicates that the phrase applies only to actions removed under Section 1441. *See* 28 U.S.C. § 1441(e) ("The court to which *such* action is removed . . . ." (emphasis added)). Moreover, "[i]t is generally presumed that Congress acts intentionally and purposely where it includes particular language in one section of a statute but omits it in another." *Bates v. United States,* 522 U.S. 23, 118 S.Ct. 285, 287, 139 L.Ed.2d 215 (1997). Here, neither Section 1441(e) nor the House Report accompanying the bill leading to its enactment reference any removal provision apart from Section 1441.

Additionally, the weight of authority holds that the derivative jurisdiction doctrine remains applicable to removals under Section 1442(a)(1). *See Smith v. Cromer,* 159 F.3d 875, 879 (4th Cir.1998) ("It is clear that a federal court's jurisdiction upon removal under 28 U.S.C. § 1442(a)(1) is derivative of the state court jurisdiction, and where the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though in a like suit originally brought in federal court, the court would have had jurisdiction."); *Elko County Grand Jury v. Siminoe,* 109 F.3d 554, 555 (9th Cir.) ("[B]ecause this case was removed from state court pursuant to § 1442, our jurisdiction is derivative of the state court's jurisdiction."), *cert. denied,* 522 U.S. 1027, 118 S.Ct. 625, 139 L.Ed.2d 606 (1997); *Edwards v. United States Dep't of Justice,* 43 F.3d 312, 316 (7th Cir.1994); *People v. Mayfield,* No. 99 C 2702, 1999 WL 414264, at *3 (N.D.Ill. May 27, 1999) ("On a removal from state court pursuant to Section 1442, this Court's jurisdiction is derivative of the state court's jurisdiction."); 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3727, at 170 (1998) ("The discredited doctrine of derivative jurisdiction persists in cases removed under Section 1442. . . . In other words, the federal court cannot confer subject matter jurisdiction over a case removed under Section 1442 if none existed at the state level."); 16 James Wm. Moore, *Moore's Federal Practice* § 107.15[1][b][vi] (3d ed. 1997) ("*Moore's Federal Practice*"). In his treatise, Professor Moore actually opines that

in the context of removal under Section 1442, the purpose of [Section 1441(e)] makes little practical sense. In the first place, removal under Section 1442 is broader than under the general removal statute. . . . Thus, it defies logic to say that a defect that no longer prevents a case from being removed under the general removal statute will prevent removal of cases involving federal officers and agencies. Second, an examination of cases discussing derivative jurisdiction

in cases removed under Section 1442 demonstrates that the purpose for permitting removal is being served. The federal courts are dismissing the claims against the federal officials rather than remanding to state court and requiring the officials to move to dismiss there. Or, the federal courts are simply refusing to provide relief that the state court could not have provided.

On the other hand, the Eight Circuit in *Fredericks* held that "the policy of Congress underlying new § 1441(e) supports the complete abandonment of the derivative-jurisdiction doctrine." 940 F.2d at 337. Even the *Fredericks* court conceded, however, that "the words of [Section 1441(c) ] clearly do not reach this far." *Id.* Given the plain language of Section 1441(e), ordinary principles of statutory construction and the weight of authority, the Court holds that the doctrine of derivative jurisdiction remains viable under Section 1442.

 In sum, because the state court lacked jurisdiction over the Third–Party Action, this Court acquired none upon removal. Accordingly, both the Third–Party Complaint and the Second Third–Party Complaint must be dismissed, and the remainder of the action remanded to the Nassau County Supreme Court. *See Moore's Federal Practice* § 107.15[1][b][vi] ("If the state court lacks jurisdiction, . . . the federal court should dismiss the action against the federal agency . . . and remand any other claims against other defendants."); *Bentson,* 146 F.3d at 679 (after proper removal of action, "[o]nce the court determined that it lacked subject matter jurisdiction over the claims against the IRS, it properly dismissed those claims before remanding the remainder of the case to state court.").

## CONCLUSION

For the reasons set forth above, the Government's motion to dismiss the Third–Party Complaint and the Second Third–Party Complaint is **GRANTED.** Addition-

ally, the remainder of the action is remanded to the Nassau County Supreme Court.

**IT IS SO ORDERED.**