## In re: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

**This document relates to:**

**County of Suffolk and Suffolk County Water Authority, Plaintiffs,**

v.

**Amerada Hess Corp., Atlantic Richfield Co., BP Corporation North America Inc. (f/k/a BP Amoco Corp.), BP Products North America Inc. (f/k/a Amoco Oil Co.), Chevron Texaco Corp. (f/k/a Chevron USA Inc. and f/k/a Texaco**

---

Refining and Marketing Inc. and f/k/a Texaco, Inc.), Citgo Petroleum Corp., Conocophillips Co., El Paso CGP Co., Exxon Mobil Corp. (f/k/a Exxon Corp.), Equilon Enterprises, LLC (n/k/a Shell Oil Products US), Getty Petroleum Marketing Inc., Lyondell Chemical Corp., Motiva Enterprises, LLC, Shell Oil Co., Shell Oil Products US, Sunoco Inc. (R & M), Valero Marketing and Supply Co, Defendants.

Lyondell Chemical Corp., Third–Party Plaintiff,

v.

Marathon Ashland Petroleum LLC, John Doe Corp. # 1–50, Third–Party Defendants.

No. MDL 1358(SAS).
No. 04Civ.5424 (SAS).

United States District Court, S.D. New York.

July 13, 2004.

354

Robert Gordon, C. Sanders McNew, Stanley N. Alpert, Weitz & Luxenberg, P.C., New York City, for Plaintiffs County of Suffolk, et al. and Liaison Counsel for Plaintiffs.

Steven R. Gustavson, Paul J. Reilly, Steven L. Leifer, Baker Botts LLP, New York City, for Third–Party Defendant Marathon Ashland Petroleum LLC.

Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott, Will & Emery, New York City, Liaison Counsel for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

This case is one of dozens of cases in a multi-district litigation ("MDL"), in which numerous plaintiffs are seeking relief from contamination or threatened contamination of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE").[1] This opinion re-

---

1. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* No. M21–88, MDL No. 1358, 2004 WL 515535

lates only to *County of Suffolk, et al. v. Amerada Hess Corp., et al.,* No. 04 Civ. 5425.

On May 6, 2002, plaintiffs County of Suffolk and Suffolk County Water Authority (collectively "Suffolk") filed a complaint in the United States District Court for the Eastern District of New York against many energy companies, not including Amerada Hess Corporation, alleging that defendants were liable for adding MTBE to their gasoline, knowing it would contaminate and create an enhanced risk to groundwater.[2] On August 19, 2002, Suffolk filed a separate action against Amerada Hess in state court, alleging the same claims. Thereafter, Suffolk withdrew its complaint from the Eastern District and amended its state court complaint to add essentially the same defendants from the federal action.[3]

The state court case proceeded for a year and a half when, on March 22, 2004, defendant Lyondell Chemical Corporation ("Lyondell") filed a third-party complaint against Marathon Ashland Petroleum LLC ("Marathon") for indemnification and contribution should Suffolk succeed on its claims. In response, Marathon removed this case to federal court based on section 1442(a) of Title 28 of the United States Code, the federal officer removal statute.

In its Notice of Removal, Marathon cited my March 16, 2004 Opinion and Order, holding that this Court has federal agent jurisdiction over the consolidated MTBE cases.[4] The Judicial Panel on Multidistrict Litigation transferred the instant action to me as a related case.

Suffolk now moves to remand, arguing that: (1) Marathon should be barred from removing the case as a third-party defendant; (2) Marathon is not a federal officer for purposes of the federal officer removal statute; and (3) the Court should abstain from exercising its jurisdiction. For the reasons that follow, Suffolk's motion to remand is denied.

## I. BACKGROUND

### A. The Allegations[5]

MTBE is a chemical compound added to gasoline to increase the gasoline's oxygen content and make it cleaner burning. MTBE does not occur naturally but is a byproduct of the gasoline refining process. It is highly soluble in water and does not readily biodegrade. Because of its high solubility, MTBE races through underground water reservoirs, quickly reaching the water table and wells whenever gasoline leaks, spills, or is released into the environment. It is known to be carcino-

---

(S.D.N.Y. Mar. 16, 2004) (*"MTBE II"* ); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* 209 F.R.D. 323 (S.D.N.Y.2002) (*"MTBE I"* ).

**2.** The defendants were Atlantic Richfield Company; BP Corporation America Inc. (f/k/a BP Amoco Corporation); BP Products North America Inc. (f/k/a/ Amoco Oil Company); Chevron Texaco Corporation (f/k/a Chevron USA Inc. and f/k/a Texaco Refining and Marketing, Inc. and f/k/a Texaco, Inc.); Citgo Petroleum Corporation; El Paso CGP Company; Exxon Mobil Corporation (f/k/a Exxon Corporation and f/k/a Mobil Corporation); Equilon Enterprises, LLC (n/k/a Shell Oil Products US); Motiva Enterprises, LLC; Phil-

lips Petroleum Company; Shell Oil Company; Shell Oil Products US; Sunoco Inc. (R & M); Tosco Corporation (n/k/a Phillips Petroleum Company); and Valero Marketing and Supply Company.

**3.** *See County of Suffolk, et al. v. Amerada Hess, et al.,* Ind. No. 02–22305 (Sup.Ct.N.Y.Co.).

**4.** *See* Notice of Removal of Marathon Ashland Petroleum LLC ("Marathon's Removal Notice") ¶ 5 (citing *MTBE II* ).

**5.** The facts recited herein are drawn from the allegations in the Complaint, and do *not* constitute findings of the Court.

genic in animals and is potentially cancer-causing in humans, as well. Even small quantities of MTBE impart a turpentine-like taste and odor to water, rendering it unfit for human consumption. MTBE has been detected in approximately thirteen percent of Suffolk County's water wells, which draw from the county's "sole source" aquifers and numerous streams.[6] Suffolk views the contamination as a significant health risk to the people who depend on the aquifer system for drinking water.[7]

Sometime after 1979, defendants started adding MTBE to gasoline in concentrations of approximately two to four percent in order to boost the octane level in higher grades of gasoline. Since the early 1990s, defendants have added MTBE in much higher concentrations, typically eleven to fifteen percent, in all grades of gasoline. MTBE was not the only viable option to achieve octane enhancement. Rather, its use reflected a choice and preference of defendants to profit from a gasoline refining waste byproduct. Suffolk contends that defendants added MTBE to their gasoline, knowing that it would contaminate groundwater, and also that defendants conspired to market MTBE as a gasoline additive in order to maximize their own profits.[8]

Based on these allegations, Suffolk asserts claims for (1) public nuisance; (2) strict liability for design defect; (3) strict liability for failure to warn; (4) negligence; (5) private nuisance; (6) violation of New York's General Business Law; and (7) violation of New York's Navigation Law.[9]

## B. Grounds for Removal

Marathon removed this action to federal court, asserting federal agent jurisdiction pursuant to section 1442(a). Marathon's allegations in support of removal are essentially identical to those I considered in denying remand in the consolidated cases.

Marathon asserts that in 1977, Congress amended the Clear Air Act to federalize fuel content requirements.[10] Pursuant to the amendment, the United States Environmental Protection Agency ("EPA") has express and exclusive authority to decide what fuels and fuel additives are sold nationwide.[11] By Federal Regulations issued in 1979 and 1988, EPA allows MTBE to be added to gasoline in amounts of up to fifteen percent by weight.[12]

In 1990, Congress again amended the Clean Air Act. Among other things, the amendments created two programs requiring petroleum refiners to blend oxygenates into gasoline sold throughout much of the country. These programs—the Oxy–Fuel Program ("OFP") and the Reformulated Gasoline ("RFG") Program—were designed to reduce the emission of air pollutants. According to Marathon, Congress was aware when it enacted the amendments that only a small number of oxygenates could be blended with gasoline to meet the requirements, and that MTBE would have to be used in the vast majority of oxygenated gasoline sold in the United States.[13] Moreover, Congress drafted the

---

**6.** A "sole source" aquifer is "an aquifer which is the sole or principal drinking water source for the area and which, if contaminated, would create a significant hazard to public health." 42 U.S.C. § 300h–3(e) (Safe Drinking Water Act).

**7.** *See* Second Am. Compl. ¶¶ 32, 37–40, 48–53.

**8.** *See id.* ¶¶ 31, 41–43.

**9.** *See id.* ¶¶ 152–207.

**10.** *See* 42 U.S.C. § 7545.

**11.** *See* Marathon's Removal Notice ¶ 15.

**12.** *See* 44 Fed.Reg. 12,242, 12,243 (Mar. 6, 1979); 53 Fed.Reg. 33,846 (Sept. 1, 1988).

**13.** *See* Marathon's Removal Notice ¶¶ 19, 20 (citing 136 Cong. Rec. S 6383, 6384 (1990) (remarks of Sen. Daschle)).

amendments to ensure MTBE could be used because "Congress intended that petroleum refiners use MTBE in gasoline." [14]

In 1991, pursuant to the 1990 amendments to the Clean Air Act, the EPA approved the use of seven compounds to achieve the requirements set forth in the OFP: (1) MTBE; (2) ethanol; (3) methanol; (4) tertiary amyl methyl ether ("TAME"); (5) ethyl tertiary butyl ether ("ETBE"); (6) tertiary butyl alcohol ("TBA"); and (7) diisopropyl ether ("DIPE"). [15] According to Marathon, "[l]ike Congress, the EPA understood that MTBE would be 'the most common oxygenating compound' used by refiners to comply with the CAA's new air emissions standards." [16] The EPA subsequently approved MTBE as an acceptable oxygenate for the RFG program, and the RFG requirements went into effect on January 1, 1995. [17]

Finally, Marathon claims that when the EPA approved MTBE for use with the RFG Program, it knew of MTBE's potential to contaminate groundwater, and further knew that there was not a sufficient supply of ethanol or an infrastructure needed to manufacture ethanol to satisfy the program requirements. [18] Accordingly,

the EPA knew that the *only* way refining companies could meet the requirements promulgated in the OFP and RFG Programs, and thereby comply with the Clean Air Act, was to use MTBE as a gasoline additive. Congress and the EPA therefore effectively directed Marathon to use, manufacture, and/or sell gasoline that contains MTBE. [19]

## II. LEGAL STANDARD

### A. Removal and Remand

Under section 1447(c) of Title 28, a case removed from state court shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." When a party files a motion to remand challenging the removal of an action from state court, "the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.' " [20] "Out of respect for the independence of state courts, and in order to control the federal docket, 'federal courts construe the removal statute narrowly, resolving any doubts against removability.' " [21] If the removing party cannot demonstrate federal jurisdiction by "competent proof," the removal was in error and the district court must remand the case to the court in which it was filed. [22]

14. *Id.* ¶ 24.

15. *See id.* ¶ 25 (citing Proposed Guidelines for Oxygenated Gasoline Credit Programs Under section 211(m) of the Clean Air Act as Amended, 56 Fed Reg. 31151, 31154 (July 9, 1991)).

16. *Id.* ¶ 26 (quoting Approval and Promulgation of Implementation Plan, 56 Fed.Reg. 5458, 5465 (Feb. 11, 1991)).

17. *See id.* ¶¶ 27, 28 (citing Final Rule, Regulation of Fuels and Fuel Additives: Standards for Reformulated and Conventional Gasoline, 59 Fed.Reg. 7716, 7732 (Feb. 16, 1994)).

18. *See id.* ¶ 31.

19. *See id.* ¶ 35.

20. *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir.1979) (quoting

*McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). *See also Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); *Carson v. Dunham,* 121 U.S. 421, 425–26, 7 S.Ct. 1030, 30 L.Ed. 992 (1887).

21. *Kings Choice Neckwear, Inc. v. DHL Airways, Inc.,* No. 02 Civ. 9580, 2003 WL 22283814, at \*2 (S.D.N.Y. Oct. 2, 2003) (quoting *Somlyo v. J. Lu–Rob Enters., Inc.,* 932 F.2d 1043, 1045–46 (2d Cir.1991)). *See also Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 31, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002).

22. *See, e.g., Kings Choice Neckwear,* 2003 WL 22283814.

It is well-established that [t]o determine whether the claim arises under federal law, [courts] examine the "well pleaded" allegations of the complaint and ignore potential defenses: "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of [its] own cause of action shows that it is based upon those laws or that Constitution." As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim.

There are, however, two exceptions to the general rule. *First,* a state law claim may be removed to federal court when the claim is completely preempted by federal law. When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that "arises under" federal law to be removed to federal court.... *Second,* an action may be removed to federal court where Congress so provides. Thus, where a statute specifically gives federal courts jurisdiction over a particular subject matter, and states that actions involving that subject matter may be removed to federal court despite the absence of federal claims, removal is proper even where the "well-pleaded complaint" rule is not satisfied.[23]

■ The federal officer removal statute falls within the second exception because Congress expressly provided that actions against persons acting under color of a federal officer or agency may be removed to federal court, despite the absence of any federal claims.[24] Under section 1442(a), a private party may remove a state court action if (1) the party acted under the direction of a federal agency or officer; (2) the party has a colorable federal defense; and (3) there is a causal connection between the federal direction and the conduct in question.[25]

## III. DISCUSSION

### A. Removal by Third–Party Defendant

■ Suffolk contends that the Court should remand this case because third-party defendants are not generally permitted to remove cases to federal court. Although section 1442(a) specifically permits third-party removal by a federal officer, Suffolk urges the Court not to expand removal jurisdiction to private corporations not in contractual privity with the United States, because the policy concerns underlying the removal statute are attenuated as applied to these corporations. This argument is meritless.

Marathon is not barred from removing this case to federal court by virtue of its third-party defendant status. Although third parties may not generally remove under section 1441, which permits removal by original defendants only, removal is proper under section 1442. Section 1442(a)(1) provides: "A civil action ... commenced in a State court against *any* of the following may be removed by them to the district court of the United States[ ]: ... any officer or person acting under that officer of the United States or of any

---

23. *MTBE II,* 2004 WL 515535, at *4 (quotation marks and citations omitted).

24. *See Jefferson County v. Acker,* 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) ("Suits against federal officers are an exception in this regard. Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint.").

25. *See id.*

agency thereof, sued in an official or individual capacity for any act under color of such office ..." (emphasis added). The statute unambiguously confers removal rights on any defendant claiming it acted at the direction of the federal government.[26]

▮▮▮ Furthermore, policy considerations support such a removal right. "Section 1442 is intended to protect federal interests by providing federal officials a federal tribunal in which to litigate matters concerning acts committed in their federal capacity. Unlike § 1441, § 1442 is a jurisdictional grant in itself giving the federal court subject matter jurisdiction over the entire case."[27] Courts treat third-party removal under section 1442 differently because it rests upon "far stronger considerations of policy" than removal under section 1441.[28] Therefore, Marathon's third-party defendant status does not preclude removal to this Court.

## B. Federal Agent Jurisdiction

▮▮▮ On March 16, 2004, based on complaints pleading nearly identical factual allegations, I held that this Court has federal agent jurisdiction over the consolidated cases because the defendants alleged that they (1) acted at the express direction of the federal government; (2) have a colorable federal defense of preemption; and (3) there is a causal connection between plaintiffs' claims and the defendants' acts taken at the direction of the EPA.[29] I found that the defendants in those cases had sufficiently alleged that they added MTBE to gasoline at the direction of a federal agency when they alleged that Congress and the EPA were aware that defendants would have to use MTBE to comply with the Clean Air Act's requirements.[30]

While vigorously disputing the conclusion reached by the Court in its March 16 Opinion and Order, Suffolk argues that Marathon cannot remove this case pursuant to section 1442(a) because Marathon does not sell gasoline in New York.[31] According to Suffolk, the EPA requires only that gasoline sold in all or part of seventeen states include an oxygenate.[32] While New York is one of these states, Marathon cannot claim federal officer status because of its complete absence from the New York gasoline markets. In fact, in its answer to Lyondell's third-party com-

---

**26.** *See Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Maine Dep't of Human Services,* 876 F.2d 1051 (5th Cir.1989) (Secretary of Health and Human Services could remove case under section 1442(a)); *Johnson v. Showers,* 747 F.2d 1228 (8th Cir. 1984) (fact that director of federal agency was third-party defendant did not defeat removal under section 1442(a)); *Moreland v. Van Buren GMC,* 93 F.Supp.2d 346 (E.D.N.Y.1999) ("[T]hird-party defendant status does not defeat removal under Section 1442(a)(1)."); *Reese v. South Florida Water Mgmt.,* 853 F.Supp. 413 (S.D.Fla.1994) (third-party defendant federal officials permitted to remove case); *National Ctr. for Housing Mgmt. v. Housing Auth. of the City of Milwaukee,* 668 F.Supp. 1230 (E.D.Wis.1987) (third-party defendant removal by Department of Housing and Urban Development was appropriate).

**27.** *Reese,* 853 F.Supp. at 414.

**28.** *Moreland,* 93 F.Supp.2d at 350.

**29.** *See MTBE II,* 2004 WL 515535, at *10.

**30.** *See id.* at *7. Although plaintiffs in nine cases moved to remand, the March 16, 2004 Opinion and Order applied to all the MTBE cases. At that time, there were over forty MTBE cases pending before this Court.

**31.** *See* Memorandum of Law in Support of Plaintiffs' Motion to Remand ("Pl.Mem.") at 7.

**32.** *See id.* at 6–7.

plaint, Marathon denies having a retail presence in New York.[33]

Marathon responds with two arguments. *First,* Marathon argues that Suffolk's counsel and co-counsel have conceded Marathon's presence in New York by suing Marathon in almost twenty New York cases, including some alleging contamination in Long Island.[34] After this case was removed, Suffolk's counsel dropped Marathon from each of its New York complaints, but co-counsel continues to prosecute seven other MTBE cases against Marathon in New York.[35] *Second,* Marathon asserts that although it alleged in its answer to Lyondell's complaint that it did not refine or sell reformulated gasoline in New York, it took no position on whether any of its MTBE-containing gasoline ended up in New York through exchange agreements or other mechanisms.[36] In fact, upon further investigation, Marathon now reports that it indirectly sells or markets gasoline in New York. That is, Marathon sells or markets gasoline to non-affiliated jobbers who then sell or distribute the product to third parties for further distribution in New York.[37] Marathon also ships gasoline to and through the adjacent states of New Jersey and Pennsylvania.[38]

Marathon has sufficiently alleged that it added MTBE to gasoline for sale in New York at the direction of a federal agent.

Although Marathon does not directly sell or market gasoline in New York, it indirectly participates in the New York market through independent jobbers. Marathon knew that some of its gasoline would be delivered to New York because some jobbers specified New York as a destination state for the gasoline purchased from Marathon.[39] Moreover, Marathon ships gasoline to and through New Jersey and Pennsylvania, both of which include RFG areas. Because these states are adjacent to New York, it is possible that some New Jersey- or Pennsylvania-bound gasoline has been sold in New York as a result of spillover sales.[40] Therefore, as a matter of law, Marathon is not barred from asserting it acted under the direction of the EPA and from removing this case pursuant to section 1442(a). To the extent factual disputes exist concerning whether gasoline reaching New York was actually RFG, these disputes are appropriately resolved in federal court.

## C. Abstention

Suffolk next contends that the Court should abstain from exercising its jurisdiction because (i) this case presents "difficult questions of state law bearing on problems of substantial public import whose importance transcends the results of the case at bar" and (ii) "exceptional circumstances"

---

33. *See id.* at 4, 7 (citing Marathon's Answer to Lyondell Third–Party Complaint).

34. *See* Third–Party Defendant Marathon Ashland's Memorandum of Law in Opposition to Plaintiffs' Motion for Remand ("Marathon Mem.") at 4–5.

35. *See id.* at 5.

36. *See id.* at 7.

37. *See* Third–Party Defendant Marathon Ashland Petroleum LLC's Responses to Queries Contained in the Court's June 22, 2004 Order at 1–3. Marathon sold or marketed gasoline

to jobbers in (1) Midland, PA, (2) Brecksville, OH, (3) Indianola, PA, (4) Youngstown, OH, (5) Floreffe, PA, and (6) Neville Island, PA, for sale in various locations in New York. *See id.*

38. *See id.*

39. *See id.* at 3.

40. "Spillover sales" refers to sales of reformulated gasoline outside of RFG areas because the boundaries of the RFG areas do not always coincide geographically with the gasoline distribution system. *See* EIA, The Energy Information Administration's Assessment of Reformulated Gasoline at 28 (Oct.1994).

call for abstention. Specifically, Suffolk argues that the market share theory of liability involves matters of first impression that should be left for New York courts to decide, and that the "reactive nature" of Lyondell's third-party complaint and considerations of comity weigh in favor of the Court exercising restraint.

Plaintiffs further argue that Lyondell impleaded Marathon for the sole reason of coming to federal court after the defendants suffered serious defeats in state court—namely, losing their motion to dismiss and being ordered to complete discovery on an expedited basis. Suffolk suggests that defendants and Marathon colluded to remove the case, citing (1) Marathon's failure to comply with the state court's discovery schedule, (2) Marathon's filing of its notice of removal within a week of being served with the third-party complaint, and (3) the fact that Marathon's attorneys also represent Lyondell in a corporate transaction. In addition, Suffolk claims that because it is a sovereign authority, the concern for federal-state relations, comity, federalism, and efficient judicial administration justifies abstention from the exercise of jurisdiction.

■ Abstention from the exercise of federal jurisdiction is an "extraordinary and narrow" exception, not the rule.[41] A district court may abstain from hearing a case in four circumstances: (1) where the resolution of a federal constitutional question may be rendered unnecessary by a state-court interpretation of an ambiguous statute (*Pullman* abstention);[42] (2) to avoid interference with essential state functions, such as state criminal proceedings (*Younger* abstention);[43] (3) where the case involves difficult state-law questions involving local regulation or important matters of local public policy (*Burford* abstention);[44] or (4) in "exceptional circumstances" where concurrent state-court litigation could result in comprehensive disposition of the litigation (*Colorado River* abstention).[45] "Because we are considering an exception to a court's normal duty to adjudicate a controversy properly before it, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved."[46] The latter two abstention categories are the only ones that might be applicable here. However, Suffolk has failed to show that this case falls within the narrow and specific limits of either the *Burford* or *Colorado River* abstention doctrines.

■ This case does not involve difficult questions of state law that implicate important matters of local public policy. New York's highest court has already adopted the market share theory of liability when the product at issue is fungible, incapable of identification by manufacturer, and each of the manufacturers created the same degree of risk to consumers.[47] Because the state court has spoken author-

---

41. *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236.

42. *See Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)

43. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)

44. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)

45. *See Colorado River v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

46. *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 78 F.3d 764, 775 (2d Cir.1996) (quotations marks and citations omitted) (*"Asbestos Litig."*).

47. *See Hamilton v. Beretta Corp.*, 96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001) (guns); *Hymowitz v. Eli Lilly and Co.*, 73 N.Y.2d 487, 541 N.Y.S.2d 941, 539 N.E.2d 1069 (1989)(DES).

itatively on the collective liability issue, all that remains is for this Court to apply the state's law.

■ Suffolk asserts that even though the state court has ruled on this question of law, the Court should abstain because the issues are nevertheless difficult. As evidence, plaintiffs cite the fact that one federal district court has interpreted New York's rule on market share liability incorrectly.[48] However, the potential difficulty of a decision is not a ground for abstention.[49]

"In the absence of some recognized public policy or defined principle guiding the exercise of jurisdiction conferred ... it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly involved, to decide questions of state law whenever necessary to the rendition of judgment."[50] This is a products liability case. While the state surely has an interest in seeing all claimants fully compensated and all tortfeasors paying their fair share, Suffolk cannot point to any special policy or state regulatory system that would be affected by this Court's exercise of jurisdiction.[51]

■ Furthermore, there is no basis for this Court to consider "exceptional circumstances" for abstaining because there is no pending concurrent state court litigation. The Second Circuit has held that "[t]he principles of *Colorado River* are to be applied only in situations involving the contemporaneous exercise of concurrent jurisdiction. Therefore, a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River.*"[52] This case was removed from state court to federal court. As a result, the case will be heard in only one forum. Because a precondition to abstention is lacking, the Court need not address the "exceptional circumstances" Suffolk raises.

## IV.  CONCLUSION

Marathon has met its burden of establishing the appropriateness of removal pursuant to section 1442(a), and there is no reason for the Court to abstain from the exercise of jurisdiction. Accordingly, Suffolk's motion to remand is denied. The Clerk of the Court is directed to close this motion.

SO ORDERED.

---

**48.**  *See* Pl. Mem. at 19.  In *Hamilton v. Accu–Tek*, 62 F.Supp.2d 802 (E.D.N.Y.1999), the court upheld a jury verdict holding handgun manufacturers liable under a market share theory of liability.  The defendants appealed to the Second Circuit, which certified the question to the New York Court of Appeals.  *See Hamilton v. Beretta*, 222 F.3d 36, 39 (2d Cir.2000).  On certification, the Court of Appeals disagreed with the court's ruling because, under New York law, market share liability does not extend to handgun manufacturers that create different degrees of risk to consumers.  *See Hamilton*, 96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055.

**49.**  *See Asbestos Litig.*, 78 F.3d at 776.

**50.**  *Id.*

**51.**  *See id.  See also Dittmer v. County of Suffolk*, 146 F.3d 113, 117 (2d Cir.1998) (*"Burford* is concerned with protecting complex state administrative processes from *undue* federal interference, [but] it does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy.") (emphasis in original).

**52.**  *Dittmer*, 146 F.3d at 117–18 (quotation marks and citations omitted).