*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0101p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re:  ROBERT HARRIS LONG and GINGER DENISE LONG,

                                               _Debtors._

_____

AMERICREDIT FINANCIAL SERVICES, INC.,

                                    _Creditor-Appellant,_

     _v._

ROBERT HARRIS LONG and GINGER DENISE LONG,

                                    _Debtors-Appellees._

No. 06-6252

_____

Appeal from the United States Bankruptcy Court
for the Eastern District of Tennessee at Knoxville.
No. 06-30651—Richard Stair, Bankruptcy Judge.

Argued:  October 23, 2007

Decided and Filed:  March 4, 2008

Before:  MERRITT and CLAY, Circuit Judges; COX, District Judge.[*]

_____

### COUNSEL

**ARGUED:**  Stephen P. Hale, HALE, DEWEY & KNIGHT, Memphis, Tennessee, for Appellant. John P. Newton, Jr., MAYER & NEWTON, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Stephen P. Hale, HALE, DEWEY & KNIGHT, Memphis, Tennessee, Holly N. Knight, HALE, DEWEY & KNIGHT, Nashville, Tennessee, for Appellant. John P. Newton, Jr., Richard M. Mayer, Brent S. Snyder, MAYER & NEWTON, Knoxville, Tennessee, for Appellees. Tara A. Twomey, San Jose, California, Richardo I. Kilpatrick, KILPATRICK & ASSOCIATES, Auburn Hills, Michigan, Joseph R. Prochaska, WILLIAMS & PROCHASKA, Nashville, Tennessee, for Amici Curiae.

     MERRITT, J., delivered the opinion of the court.  COX, D. J. (pp. 10-11), delivered a separate opinion concurring in the judgment.  CLAY, J. (p. 12), delivered a separate dissenting opinion.

_____

[*] The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

MERRITT, Circuit Judge.  This consumer bankruptcy, Chapter 13 case arises because the debtor bought a car under a typical financing arrangement in which the lender retained a lien or mortgage on the car as security for payment of the outstanding loan that enabled the debtor to buy the car.  The debtor proposed to surrender the car to the finance company as part of the Chapter 13 plan.  The value of the car was less than the outstanding debt.  Due to a glitch or gap in a recent revision of the Bankruptcy Code intended to benefit creditors, the law is now silent on what happens to the remaining indebtedness in the surrender-of-the-car situation.  The bankruptcy court below held that the congressional mistake in drafting the revision means that the remaining indebtedness is completely wiped out.  We believe the gap should be filled and the Congressional mistake corrected.  The law previously governing this situation should be restored until Congress can correct its mistake and fill in the gap.

**I.  The Issue to be Decided**

The gap in the law is caused by a newly-formed inconsistency between §§ 1325(a) and 506 of the Bankruptcy Code.  Congress simply overlooked providing for what happens in Chapter 13, consumer bankruptcy cases when the debtor surrenders the car to the lender instead of retaining the car and paying off the loan.

In the twelve-month period ending September 2007, there were 310,802 Chapter 13 bankruptcies.  In many of these, there were secured loans for automobiles or trucks and other personal property for the bankruptcy courts and Chapter 13 trustees to deal with.  Some courts have addressed the gap in the law by adopting a remedy based on state law remedies of foreclosure, repossession, sale at auction and adjudication to determine the deficiency that arises from the fact that the collateral is usually worth less than the remaining debt.  These several state law contractual, foreclosure and judicial remedies vary widely from state to state.

By a mistake in drafting, the 2005 revision of the Bankruptcy Code does not provide for the situation in which a Chapter 13 debtor proposes to surrender the collateral to the creditor holding the lien, or purchase-money mortgage or other security interest.  As Chief Judge Easterbrook recently wrote for the Seventh Circuit in an Illinois Chapter 13 case similar to the one before us:

> Bankruptcy judges across the nation have divided over the effect of the unnumbered hanging paragraph that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 added to § 1325(a) of the Bankruptcy Code, 11 U.S.C. § 1325(a).  Section 1325, part of Chapter 13, specifies the circumstances under which a consumer's plan of repayment can be confirmed.  The hanging paragraph says that, for the purpose of a Chapter 13 plan, § 506 of the code, 11 U.S.C. § 506, does not apply to certain secured loans.

*In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007).

In the absence of any clear bankruptcy law covering how to handle the surrender of cars and other collateral, we agree with the Seventh Circuit that the bankruptcy courts should not simply allow the debtor to surrender the car and then wipe out the deficiency, as the bankruptcy court in the instant case ruled.  Wiping out the deficiency altogether undermines reasonable obligations created by the contract between the parties.  These contractual obligations are referred to in our Constitution, *see* U.S. CONST. art. I, § 10, cl. 1, and normally should be enforced as a part of the Rule of Law based on concepts of freedom of contract and private property.  But we do question the wisdom of

the Seventh Circuit and our concurring colleague that the resulting deficiency judgment in bankruptcy should depend entirely on the vagaries of state laws as to foreclosure, repossession, sale and judicial remedy. By the adoption of § 506 and § 1325, Congress has demonstrated an intent to federalize and make uniform the treatment of purchase-money mortgages in bankruptcy. A uniform national rule should be adopted and substituted for the widely varying procedural and substantive foreclosure, repossession and deficiency judgment rules provided by the 50 states.

## II. Analysis of Sections 506(a) and 1325(a) of the 2005 Revision of the Bankruptcy Code

Section 506(a)(1) and (2), as amended, which defines for bankruptcy the nature of the secured creditor's claim, reads in relevant part:

> (a)(1) An allowed claim of a creditor secured by a lien on property . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . .
> (2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506 (2007). After establishing the "allowed secured claim" in § 506(a), section 1325(a) then provides for one of three treatments "with respect to each allowed secured claim provided for by the plan," as set out below.[1] First, the holder of the claim can accept the debtor's proposed plan under § 1325(a)(5)(A). If the creditor does not accept the plan, the debtor can either retain the collateral subject to the requirements in § 1325(a)(5)(B), or surrender the collateral pursuant to

---

[1]11 U.S.C. § 1325(a)(5) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if —
. . .
(5) with respect to each allowed secured claim provided for by the plan —
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that —
(I) the holder of such claim retain the lien securing such claim until the earlier of —
(aa) the payment of the underlying debt determined under nonbankruptcy law; or
(bb) discharge under section 1328; and
(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
(iii) if —
(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
(C) *the debtor surrenders the property securing such claim to such holder . . . .*

(emphasis added).

§ 1325(a)(5)(C). Prior to the 2005 revision, 11 U.S.C. §§ 506(a) and 1322(b)(2)[2] operated to enable Chapter 13 debtors to bifurcate claims into secured and unsecured portions.

What has caused the confusion and incoherence in the law is known as the unnumbered "hanging paragraph" or "anti-cramdown paragraph" that Congress inserted immediately following section 1325(a):

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Courts use different terms to talk about the hanging paragraph because the provision does not have an alphanumeric designation. See *In re Carver*, 338 B.R. 521, 523 (Bankr. S.D. Ga. 2006), which explains two of the errors arising from negligent drafting of the revision:

> The reader immediately notices two problems. First, the provision "has no alphanumeric designation and merely dangles at the end of § 1325(a). There is no way to cite to this provision other than its proximity to other citable provisions." Dianne C. Kerns, *Cram-a-lot: The Quest Continues*, 24-Nov. Am. Bankr. Inst. J. 10, 10 (2005). In addition, the provision is "missing an operable word. The first sentence refers to 'the 910-day [period] preceding the date of the filing of the petition . . . .'" *Id*. Without the addition of "period," the provision makes little sense and could be read to apply only to debts of the type described that were incurred exactly 910 days — no more, no less — prior to the petition date. These two problems are mere shadows of the larger interpretation difficulties this provision presents.

(internal citation omitted). Not only must words be added to make any sense of the paragraph, but the literal meaning of the paragraph must be altered to deal with debtors who surrender the collateral instead of retaining it. (Our concurring colleague seems to be the only observer who finds no gap, mistake or incongruity in connection with the surrender of collateral under sections 506(a) and 1525.)

The bankruptcy court found and neither party disputes that all of the requirements set forth in the hanging paragraph are met in this case. Specifically, (1) the debtors purchased a car within the 910-day period set forth in the statute, (2) AmeriCredit holds a purchase money security interest in the car, and (3) the car was acquired for the debtors' personal use. Creditors falling under this paragraph are commonly referred to as "910 creditors."

1. *The hanging paragraph does not make § 506 entirely inapplicable to secured claims.*— When the hanging paragraph applies, it purports to exempt all 910 claims from treatment under 11 U.S.C. § 506 which is titled "Determination of secured status." In addition to providing for the bifurcation of claims, section 506 is used first to determine when allowed claims become "secured"

---

[2](b) Subject to subsections (a) and (c) of this section, the plan may —

. . .

>     (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

for purposes of the Bankruptcy Code.  It may be argued that literally, without section 506, there cannot be an "allowed secured claim" at all under § 1325(a)(5).  In his treatise, Judge Lundin explains that "[a]n allowed secured claim to which § 506 does not apply is an oxymoron" because "a lienholder must pass through § 506 to have an allowed secured claim but then § 506 'shall not apply' if the debt meets the new 910-day [rule]."  KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. 446-2, 3 (2000 & Supp. 2007-1).  We agree with Judge Lundin and with those courts that have found that this literal interpretation makes no sense and that Congress did not intend for 910 claims to be a unique, previously unheard-of, class of claims not governed by section 1325(a)(5).  *See*, *e.g.*, *In re DeSardi*, 340 B.R. 790, 812 (Bankr. S.D. Tex. 2006) ("Taking 910 claims out of the purview of § 506 does not mean 910 claims are a new and unique class of claims. . . . The Court finds it unlikely that Congress would create a new, undefined type of claim, and then furnish no guidance as to how such a claim should be handled.).  Further, we agree with the Lundin treatise that a claim cannot be an "allowed secured claim" for purposes of § 1325(a)(5) without first coming through the § 506 gateway.  Consequently, we decline to read the hanging paragraph to use state law or some unknown, federal law to create an allowed secured claim.

2.  *The purpose of the hanging paragraph is to change the law relating to retained collateral.*— The hanging paragraph is often referred to as the "anti-cramdown" or "anti-bifurcation" paragraph "because its most obvious function is to block bifurcation of a 910 Creditor's lien into secured and unsecured portions so that a debtor who wishes to retain a 910 Vehicle under Section 1325(a)(5)(B) must pay the full amount owing to the secured creditor without regard to the present value of the collateral."  *In re Pinti*, 363 B.R. 369, 375 (Bankr. S.D.N.Y. 2007).  Understanding how debtors "crammed down" their debt prior to the 2005 amendments is critical because the hanging paragraph was intended to address that simple issue — the issue of how to treat claims when the debtor retains the collateral.  On this point, an excerpt from Judge Lundin's treatise is instructive:

> Prior to BAPCPA, cramdown of secured claims at confirmation in Chapter 13 cases was uniform and well understood.  Oversimplified, under § 506(a) an allowed claim was a secured claim to the extent of the value of the collateral.  Undersecured claims were split into secured and unsecured components based on the value of the collateral.  With or without consent of the lienholder, a Chapter 13 debtor could confirm a plan that proposed to pay the allowed secured claim in full with present value interest and to treat the balance of the debt as an unsecured claim.

KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. 445-1 (2000 & Supp. 2007-1).  Cramdown occurred exclusively under § 1325(a)(5)(B) when debtors elected to retain the collateral.  In contrast, when debtors chose to surrender the collateral under § 1325(a)(5)(C), the present value of the collateral (the foreclosure value) was subtracted from the debt and the remaining debt was an allowed unsecured claim within the debtor's Chapter 13 plan.  The surrender of the collateral satisfied the allowed secured claim in full leaving the undersecured creditor with a deficiency that could only be asserted as a general unsecured claim.  The hanging paragraph eliminates the cramdown occurring under § 1325(a)(5)(B) by eliminating bifurcation under § 506.  Without § 506, creditors falling within the scope of the hanging paragraph are fully secured so that when a debtor elects to retain the collateral, the debtor must propose a plan that will pay the full amount of the claim.

Although sparse, the legislative history supports the conclusion that the paragraph was only intended to prohibit debtors from cramming down debt when they elect to retain collateral under § 1325(a)(5)(B).  *See* H.R. REP. NO. 109-31, pt. 1, at 17 and 71-72 (2005), *reprinted in* U.S.C.C.A.N. 88, 103, 140.  Based upon the legislative history, there is little doubt that the "hanging-sentence architects intended only good things for car lenders and other lienholders."  KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. 451.5-1 (2000 & Supp. 2007-1); *see, e.g., In re Duke*, 345 B.R.

806, 809 (Bankr. W.D. Ky. 2006) ("It is interesting to note that the section of BAPCPA that added the hanging paragraph was entitled, "Section 306- Giving Secured Creditors Fair Treatment in Chapter 13 . . . Restoring the Foundation for Secured Credit."). Perhaps most significantly, there is no legislative history that suggests that car lenders and lienholders should be negatively impacted by the hanging paragraph in situations where the debtor elects to surrender the collateral.

3. *Literal Application of the hanging paragraph to surrendered collateral leaves a gap in contractual remedies.* — The current confusion over the effect of the hanging paragraph is created because, by its terms, the hanging paragraph applies to the several alternatives that arise under § 1325(a)(5) — "only one of which has come to be known as 'cramdown.'" KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. 451.5-1 (2000 & Supp. 2007-1). One of those alternatives is the surrender of collateral pursuant to § 1325(a)(5)(C). Before the amendment, courts interpreted section 1325(a)(5)(C) to permit a "Chapter 13 debtor to satisfy an 'allowed secured claim' by surrendering the property securing the claim. After disposition of the surrendered collateral, an undersecured creditor may only assert the deficiency as a general unsecured claim." *In re Eubanks*, 219 B.R. 468, 473 (B.A.P. 6th Cir. 1998). In essence, whereas § 506 created an unsecured claim to the debtor's benefit when the debtor retained the collateral, § 506 also provided a deficiency claim when the debtor surrendered the collateral.

The numerous courts that have addressed this issue have reached widely conflicting conclusions. The majority of courts conclude that debtors can surrender collateral in full satisfaction of the debt without any further deficiency claim. The first decision on point and the leading case for the majority is *In re Ezell* in which Judge Stair concluded:

> [i]f the property is to be *retained* pursuant to Revised 1325(a)(5)(B), the debtor must treat the entire claim as secured . . . [and] must propose a plan that will pay the full amount of the claim as secured over the life of the plan. It only stands to reason that the same analysis is true when applied to surrender under Revised § 1325(a)(5)(C) — the creditor is fully secured, and *surrender* therefore satisfies the creditor's allowed secured claim in full.

338 B.R. 330, 340 (Bankr. E.D. Tenn. 2006) (emphasis added). In his treatise, Judge Lundin appears to concur with this conclusion and acknowledges that while it may produce a nonsensical result not intended by the drafters, most likely "the hanging sentence in § 1325(a) works with surrender of collateral under § 1325(a)(5)(C) in the same manner that an undersecured creditor risks full satisfaction by surrender when it elects to be fully secured in a Chapter 11 case under 11 U.S.C. § 1111(b)." KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. 446-3 (2000 & Supp. 2007-1). As much as we respect the authority of Judge Lundin's Chapter 13 treatise, we find unpersuasive the argument that because the Bankruptcy Code deals with nonrecourse secured debt in the treatment of secured creditors in Chapter 11 cases under § 1111(b), the complete elimination of a deficiency judgment in Chapter 13 cases is a rational result. The argument dispenses with a major obligation created by the contract. If Congress intended to create a similar outcome to the one that occurs under § 1111(b), it knew how to construct the language and its failure to do so or to make any suggestion whatsoever in the legislative history that it intended a similar outcome convinces us that the elimination of the deficiency judgment upon surrender is an unintended result. Eliminating a deficiency judgment would be in conflict with the apparent Congressional intent and would give to debtors the power to wipe out a legitimately incurred debt entirely. It is difficult to imagine why a debtor would choose to retain the collateral and make payment on the entire debt, which would be considerably more than the value of the collateral, when the surrender of the collateral would fully satisfy the debt. The consumer would have an incentive to buy an expensive new car, drive it for awhile, file for Chapter 13, surrender the car, and wipe out the debt. Car dealers and finance companies would have to figure these new uncertainties into the price or financing costs of each car sold.

The United States Supreme Court in *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997), explicitly recognized the obvious applicability of § 506(a) to surrender under § 1325(a)(5)(C). Specifically, Justice Ginsburg, analyzing the language in section 506(a) that specifies valuation of collateral should be based upon its "disposition or use," wrote:

> As we comprehend § 506(a), the "proposed disposition or use" of the collateral is of paramount importance to the valuation question. . . . [T]he debtor has two options for handling allowed secured claims: surrender the collateral to the creditor . . . or, under the cram down option, keep the collateral over the creditor's objection and provide the creditor . . . with the equivalent of the present value of the collateral . . . . The "disposition or use" of the collateral thus turns on the alternative the debtor chooses — in one case the collateral will be surrendered to the creditor, and in the other, the collateral will be retained and used by the debtor.

520 U.S. at 962. Because section 506 was applicable to the surrender of collateral before the 2005 amendments, and makes the situation incoherent if no longer applicable, we believe the best solution is to regard section 506 as continuing to apply to surrender cases.

Some courts are inclined to rely on non-bankruptcy law to create the deficiency. As stated above, the Seventh Circuit concluded that state law, and the parties' underlying contract, creates and defines the deficiency judgment upon surrender of the collateral. Specifically, the Court found that "by knocking out § 506, the hanging paragraph leaves the parties to their contractual entitlements. . . ." *In re White*, 492 F.3d 829, 832 (7th Cir. 2007). The Court, relying on the Supreme Court's holding in *Butner v. United States*, wrote "state law determines rights and obligations when the [Bankruptcy] Code does not supply a federal rule." *Id.* (citing 440 U.S. 48 (1979)). The contract at issue in *In re White* provided that the parties enjoyed any rights they had under the Uniform Commercial Code, which further provided that the "obligor must satisfy any deficiency if the collateral's value is insufficient to cover the amount due." 492 F.3d at 832. Finding the Bankruptcy Code silent regarding creditor's rights when section 506 does not apply, the Court reasoned that the "fallback under *Butner* is the parties' contract . . . rather than non-recourse secured debt . . . or no security interest. . . ." *Id.* at 833. We agree with the Seventh Circuit's effort to reconstruct the statute to preserve the intent of the parties in a deficiency judgment. The Court's approach, however, fails even to consider that a primary, underlying purpose of the Bankruptcy Code is to provide a uniform, nationwide system by which claims are handled. As this Court has recognized,

> a mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy code, 11 U.S.C. § 101 et seq., demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process.

*Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 425 (6th Cir. 2000) (quoting *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996)). Resorting to state law to preserve deficiency claims would "undermine the uniformity the Code endeavors to preserve and would 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 562-63 (6th Cir. 1998)). Relying on state law to fill the gap forces bankruptcy courts to apply the states' varying foreclosure, automobile auction, and deficiency laws rather than a uniform federal law. The

bankruptcy and reviewing courts would have to apply widely varying state laws to the tens of thousands of automobiles and other items of personal property dealt with each year in Chapter 13 cases. Specifically, judges would have to interpret varied state common law and statutory law that addresses debtors in default where the creditor must repossess the collateral. That case law has developed independently of the considerations that underlie bankruptcy cases which focus on a comprehensive plan for managing the debtor's estate. The state-specific laws, including the timing and procedure for foreclosure proceedings, notice requirements, the valuation of collateral, and what constitutes "commercial reasonableness" within the context of the Uniform Commercial Code (which has been adopted by most states) would provide widely disparate treatment to debtors and creditors whose rights Congress intended to be governed by the uniform Bankruptcy Code. Further, the Seventh Circuit's reliance on *Butner* is misplaced because while "*Butner* is certainly appropriate to determine that a creditor has a debt under state law; [it] does not compel *allowance* of the unsecured portion of that claim . . . ." KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. 451.5-12, 13 (2000 & Supp. 2007-1).

4.  *The hanging paragraph gap should be filled by prior law.* — The Supreme Court, addressing amendments to the Bankruptcy Code, has determined that "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate,'" and, therefore, the "Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992).

Because we are unable to find any legislative history that suggests that Congress intended to eliminate all deficiency claims upon surrender of the collateral and because we conclude that a literal interpretation of the statute would create an unintended and illogical result, we decline to adopt a literal interpretation of the statute. Clearly, this is not an issue free from doubt, but where a statute cannot literally be applied without undermining Congressional intent, equity requires that this Court interpret the language to produce results that conform with Congress' intent and the overriding purposes of the Bankruptcy Code.

In determining how to fill the gap left by Congress after the 2005 amendments, we employ a well-established common law principle of interpretation known as "the equity of the statute." This method of interpretation of gaps, mistakes and ambiguities in statutes has guided common law judges at least since the interpretation of the statute *De Deonis* in the Fourteenth Century. *See* THEODORE F.T. PLUCKNETT, A CONCISE HISTORY OF THE COMMON LAW 331-35 (1956); *see also North Dakota v. Fredericks*, 940 F.2d 333, 337 (8th Cir. 1991) (Arnold, J.). As described by Judge Richard Arnold, the principle connotes the idea that "statutes are an authoritative expression of public policy. That policy should be hospitably received by the courts, and they are free to apply it, absent good reasons to the contrary, in cases within the spirit of the enactment, but not within its letter." *Id.*[3] Our Court, as well, has referred favorably to interpretation according to the "equity of the statute." *See Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 815 (6th Cir. 2002); *United States v. Cheiman*, 578 F.2d 160, 163 (6th Cir. 1978). The United States Supreme

---

[3]Judge Arnold further explained the historic basis for this treatment of a gap in a statute as follows: "Sir Edward Coke put it this way:

> '*Equitie*' is a construction made by the judges, that cases out of the letter of a statute, yet being within the same mischiefe, or cause of the making of the same, shall be within the same remedie that the statute provideth. . . .

Co.Litt., Lib. 1, C. 2, § 21, f. 24b. Or, as Dean Landis put it in a pioneering article, a statute can be a 'nursing mother of the law,' Landis, *Statutes and the Sources of Law*, in *Harvard Legal Essays Written in Honor of and Presented to Joseph Henry Beale and Samuel Williston* 213, 214 (R. Pound ed. 1934), *reprinted in* 2 Harv. J. on Legis. 7, 8 (1965). This principle enables 'judges to distill from a statute its basic purpose,' and they can 'then employ it to slough off the archaisms in their own legal structure.' *Id.* at 216 and 10." *North Dakota v. Fredericks*, 940 F.2d 333, 337 (8th Cir. 1991).

Court, in *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459 (1892), recognized the "familiar rule" that:

> a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.

In the same opinion, the Court noted that when determining how to properly interpret the statute when the literal meaning creates an unintended result a guide to the meaning "is found in the evil which it is designed to remedy." *Id.* at 463. As discussed above, the hanging paragraph was intended to protect secured creditors by eliminating debtors' ability to cram-down debt under § 1325(a)(5)(B). Applying the mandate of the hanging paragraph to surrender under § 1325(a)(5)(C) would require this Court to reach a result that would not serve the policy or purpose of the amendment. Rather, we believe the gap that exists in the statute — how courts should evaluate surrender when 910 claims are involved — should be filled by employing the pre-2005 law to these cases. We hold that claims subject to the hanging paragraph where the debtor elects to surrender the collateral pursuant to § 1325(a)(5)(C) will be governed and adjudicated the same as they were before the 2005 amendments. *See Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir. 1982).

For these reasons, we reverse and remand for further proceedings in accordance with this opinion.

---

**CONCURRING IN THE JUDGMENT**

---

COX, District Judge, concurrence in judgment. I write separately because while I concur in the result, that the bankruptcy court's ruling should be reversed and remanded, I do not concur in the reasoning.

I do not agree with the lead opinion's holding that the "literal interpretation of [11 U.S.C. § 1325 and 11 U.S.C. § 506] would create an unintended and illogical result." Further, I do not find a "gap" in the law that must be filled by the courts. Finally, I am not aware of any legislative history that unequivocally supports the construction of a judge-made national rule allowing deficiency claims following surrender of collateral pursuant to 11 U.S.C. § 1325(a)(5)(C), as the lead opinion appears to hold.

The issue in this case is whether, in light of the "hanging paragraph," surrender of collateral in accordance with § 1325(a)(5)(C) is in full satisfaction of the debt, or if the creditor may pursue a claim for a deficiency. An analysis of the meaning of a statute begins with the language of the statute itself. *In re Palmer*, 219 F.3d 580, 583 (6th Cir. 2000((citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989)). "If the language of the statute is clear, this court's inquiry is at an end: 'where...the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'" *Id.* (citation omitted). "Only in those rare instances in which 'the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters or when the statutory language is ambiguous' will we look beyond the statute's plain wording to divine the intent of its drafters." *Id.* (citation omitted).

Here, the so-called hanging paragraph of § 1325(a) is not ambiguous. Under its clear terms, for purposes of § 1325(a)(5), § 506 does not apply to claims falling within the definition set forth in the hanging paragraph, otherwise referred to as 910 claims. Section 1325(a)(5) provides that a plan can be confirmed if allowed secured claims are treated in one of three ways: (A) the holder of the allowed secured claim accepted the plan; (B) the debtor retains the collateral and pays the claim in full; or (C) the debtor surrenders the collateral. The hanging paragraph provides that:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle ... acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a). The function of the hanging paragraph is to prevent the bifurcation of 910 claims allowed under 11 U.S.C. § 506(a). Section 506(a)(1) provides:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and

of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Like the bankruptcy court and the dissent in this case, the majority of courts deciding the issue of the effect of the hanging paragraph hold that there is no deficiency claim because § 506 does not apply to bifurcate the claim. See *In re Ezell*, 338 B.R. 330 (Bankr.E.D.Tenn. 2006); *In re Quick*, 371 B.R. 459 (10th Cir. BAP 2007). The majority position that deficiency claims are no longer allowed for 910 claims by virtue of the hanging paragraph's elimination of § 506 effectively renders 910 secured loans non-recourse, without regard to the contractual terms.

This argument fails because § 506 is not the source for a deficiency claim when collateral is surrendered. Section 506 is not applicable to surrender of collateral because once the collateral is surrendered, the estate no longer has an interest in the property. The property is returned to the creditor, who is free to foreclose upon the security interest and seek a deficiency pursuant to its contractual entitlements. This is the holding of *In re Particka*, 355 B.R. 616 (E.D.Mich.Bankr. 2006), which I find persuasive. As has been held by several courts, including both of the other Circuit courts to rule on the issue, the inapplicability of § 506 to § 1325(a)(5)(C), by virtue of the hanging paragraph, does not effect a change in a creditor's ability to seek a deficiency because at surrender, the parties are left to their contractual entitlements under state law. See *Capital One Auto Finance v. Osborn*, --- F.3d ----, 2008 WL 304750 (8th Cir. 2008); *In re Wright*, 492 F.3d 829, 832 (7th Cir. 2007); and *In re Rodriguez*, 375 B.R. 535, 544 (9th Cir. BAP 2007).

This is also consistent with the Supreme Court's holding in *Butner v. United States*, 440 U.S. 48 (1979). The *Wright* court relied on *Butner* for the proposition that "state law determines rights and obligations when the [Bankruptcy] Code does not supply a federal rule." *Wright*, 492 F.3d at 832. The Supreme Court held that "[p]roperty interests are created and defined by state law...[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner*, 440 U.S. at 55. Further, "[t]he justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests..." *Id.* See also *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1172 (6th Cir. 1990)("the nature and extent of the debtor's interest are determined by state law"); *In re Indian River Estates, Inc.*, 293 B.R. 429, 437 (N.D.Ohio Bankr. 2003)("it is state law, not federal which controls the debtor's interest in property").

The cases cited support the proposition that state law applies in the absence of a contrary federal bankruptcy statute and do not support the lead opinion's conclusion that whether a deficiency judgment is allowed should be determined by a "uniform national rule." A uniform national rule as urged by the lead opinion would allow a creditor to seek a deficiency following foreclosure without regard to whether the contract at issue was non-recourse under state law. There is no indication that this was the intent of Congress when it enacted the BAPCPA.

Surrender of collateral pursuant to § 1325(a)(5)(C) does not implicate § 506. Further, nothing in the Bankruptcy Code prohibits a deficiency claim under state law following surrender of collateral pursuant to § 1325(a)(5)(C). Accordingly, I would hold that a creditor has a right to an allowed unsecured deficiency claim under § 502, to the extent the contractual entitlements and state law allow a deficiency claim. See *Particka*, 355 B.R. at 624.

_____

**DISSENT**

_____

CLAY, Circuit Judge, dissenting.  I respectfully dissent from the lead opinion because I believe it oversteps the bounds of judicial interpretation by essentially rewriting sections of the Bankruptcy Code.  I agree with the court below that "a review of the legislative history for guidance does not provide any . . . evidence that the court's determination does not comport with Congressional intent when including the Anti-Cramdown Paragraph in Revised § 1325(a)."  *In re Ezell*, 338 B.R. 330, 340 (Bankr. E.D. Tenn. 2006).  The lead opinion would require us not simply to construe an ambiguity in the statute, but actually to rewrite the statute.  I would be reluctant to do so because Congress has had two years since the enactment of the statute to correct any problems that it sees with the statute and has not seen fit to do so.  I would affirm based upon the well-reasoned opinion of the bankruptcy court.